*Opposed*—None.

61 A.3d 906

D.D., PLAINTIFF–RESPONDENT, v. UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY; RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, DEFENDANTS–APPEL-LANTS.

Argued September 25, 2012—Decided March 12, 2013.

*Nicholas F. Pellitta* argued the cause for appellant Rutgers, The State University of New Jersey (*Norris McLaughlin & Marcus,* attorneys; *Mr. Pellitta* and *Edward G. Sponzilli,* of counsel; *Mr. Pellitta, Mr. Sponzilli,* and *Bradford W. Muller,* on the briefs).

*Stuart M. Feinblatt,* Assistant Attorney General, argued the cause for appellant University of Medicine and Dentistry of New Jersey (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Peter D. Wint,* Assistant Attorney General, on the briefs).

*Susan Schleck Kleiner* argued the cause for respondent (*Ms. Kleiner* and *Erin P. Drew,* on the brief).

*E. Drew Britcher* submitted a brief on behalf of New Jersey Association for Justice (*Britcher, Leone & Roth,* attorneys; *Mr. Britcher* and *Jessica E. Choper,* on the brief).

Justice HOENS delivered the opinion of the Court.

The New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3, is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity. That waiver is not unlimited, but is bound by the Legislature's declaration of purpose, *see N.J.S.A.* 59:1–2, and enforced through the application of numerous express limitations embodied in the statute's provisions. Although the legislative declaration observes that part of the purpose for enacting the statute was to address the harsh consequences of strictly

applying the common law contours of sovereign immunity, *ibid.*, we have recognized that the "guiding principle" of the Tort Claims Act is "that 'immunity from tort liability is the general rule and liability is the exception.'" *Coyne v. State Dep't of Transp.*, 182 *N.J.* 481, 488, 867 *A.*2d 1159 (2005) (quoting *Garrison v. Twp. of Middletown*, 154 *N.J.* 282, 286, 712 *A.*2d 1101 (1998)).

Far from a broad waiver of sovereign immunity, the Act was the response of the legislative and executive branches to this Court's abrogation of that traditional common law doctrine. *See Velez v. City of Jersey City*, 180 *N.J.* 284, 288, 850 *A.*2d 1238 (2004) (describing legislative history). And it is for this reason that we have often described the Tort Claims Act as the means through which the Legislature "re-establishe[d]" sovereign immunity. *Id.* at 289, 850 *A.*2d 1238; *see also Ogborne v. Mercer Cemetery Corp.*, 197 *N.J.* 448, 457, 963 *A.*2d 828 (2009); *Smith v. Fireworks by Girone, Inc.*, 180 *N.J.* 199, 207, 850 *A.*2d 456 (2004); *Alston v. City of Camden*, 168 *N.J.* 170, 176, 773 *A.*2d 693 (2001). Faithful adherence to the Legislature's intent requires us to be mindful of this essential purpose of the statute when we consider questions concerning its application in novel circumstances.

Among the most important limitations that the Act imposes on would-be claimants are the ones that are found in the statutory provisions that govern a claimant's obligation to file a notice of tort claim as a prerequisite to initiating litigation. *See N.J.S.A.* 59:8–1 to –11. This matter, which comes before this Court through a dissent in the Appellate Division, *see R.* 2:2–1(a)(2), requires us to address two significant issues relating to these statutory notice requirements.

First, we consider whether the inattention of counsel retained by a plaintiff, either independently or in conjunction with the effect of that plaintiff's medical condition, is sufficient to meet the statutory standard of extraordinary circumstances needed for an extension of the ninety-day period allowed by the statute for filing of the notice of claim. *N.J.S.A.* 59:8–9. Second, we address whether a claim that was reported only orally within the ninety-

day time frame can be found, through the application of the doctrine of substantial compliance, to have been timely filed.

We conclude that neither inattention nor incompetence of counsel meets the extraordinary circumstances test devised by the Legislature. Therefore, in the absence of other sufficient evidence of extraordinary circumstances that prevented plaintiff from pursuing a timely tort claim, we hold that the court is not authorized to grant leave to file a late notice of tort claim on that basis. We further conclude that the meaning and intent of the statutory language regarding notice preclude application of the doctrine of substantial compliance so as to permit a notice of tort claim made without a writing to suffice.

I.

The facts that give rise to this appeal are derived from the record compiled in the context of a motion for leave to file a late notice of claim. Plaintiff D.D. is the founder of a non-profit community organization that promotes health awareness. In October or November of 2009, she met with staff members of defendants Rutgers University and the University of Medicine and Dentistry of New Jersey (UMDNJ) to discuss being the keynote speaker for an upcoming World AIDS Day program that was being sponsored by Robert Wood Johnson University Hospital. As part of that discussion, plaintiff disclosed confidential information about her health, but contends that she instructed those present to keep the information private and not to disclose it to any other persons under any circumstances. Plaintiff was then asked to provide an official biography that could be used in connection with publicizing the program and she admits that she did not comply with that request.

Plaintiff asserts that on or about November 24, 2009, while she was searching the internet for information about the World AIDS Day program in which she had agreed to participate, she discovered a press release about it that revealed her private and confidential health information. Although she was not able to identify the

source of the press release, she believed it to be someone who had attended the meeting and who was employed by one of the defendants or by the sponsoring hospital.

Plaintiff asserts that she immediately sent a letter to defendants and to the hospital, directing that they "cease and desist from communicating such confidential information." More particularly, she represents that she told defendants "to remove the offending information from the internet, and to discontinue sending out any press releases." Shortly thereafter, in December 2009, plaintiff met with representatives of defendants to discuss what had transpired. She was accompanied by an attorney whom she had retained and she contends that one or more attorneys also attended the December 2009 meeting on behalf of defendants.

Plaintiff's description of what happened at the meeting is limited. She asserts that the representatives of defendants repeatedly apologized for the disclosures, asked what they could do to ameliorate the situation, and assured her that policies had already been implemented to ensure that it would not happen again. Based on those apologies and assurances, plaintiff contends that she believed "that the entire matter could be handled privately, without the need for further public humiliation and embarrassment." She does not reveal what, if any, specific demands she made nor does she explain what she believed defendants would be doing to address her concerns or to "handle" the matter.

Following the December 2009 meeting, plaintiff's attorney asked her to provide him with additional information, a request with which she promptly complied. Although her attorney assured her that he would "take care of everything," he was thereafter unresponsive to her efforts to contact him. She describes those efforts as including at least ten telephone calls, in which she left messages on his office telephone and his personal cell phone. During two of those calls, plaintiff spoke with the attorney's colleagues, each of whom told her that her attorney was out of the office teaching a class and assured her that they would give him a message that she had called.

The attorney, however, did not return her calls. Because she was unable to reach him, plaintiff retained new counsel in April 2010. On April 15, 2010, plaintiff's new attorney sent a letter to the Office of the General Counsel of Rutgers University. In that letter, the new attorney attempted to file a notice of tort claim pursuant to the New Jersey Tort Claims Act, *N.J.S.A.* 59:8–1 to :12–3. The letter was generally in the format of a tort claims act notice, *see N.J.S.A.* 59:8–4, and it specifically requested that Rutgers "waive any alleged late notice issues under the applicable statute." At about the same time, the new attorney apparently sent a similar letter to the General Counsel of UMDNJ.

Rutgers requested more detailed information about plaintiff's claims. UMDNJ responded to plaintiff's new attorney, advising that it considered the notice of tort claim to be untimely and plaintiff's claim therefore to be barred.

## II.

Because plaintiff's new attorney recognized that the notice was untimely and because defendants were unwilling to waive that defect, plaintiff commenced this litigation.

## A.

On April 27, 2010, plaintiff filed a motion in the Superior Court seeking leave to file a late notice of tort claim against defendants Rutgers and UMDNJ pursuant to *N.J.S.A.* 59:8–9. Plaintiff's motion was supported by a certification in which she gave two reasons for her failure to file a timely tort claims notice. First, she stated that during the December 2009 meeting with defendants' representatives, they did not advise her that she needed to file such a notice. Second, she described her reaction to learning about the dissemination of her personal information, explaining that she was

in absolute shock. After that, I began exhibiting medical symptoms as a result of increased stress and anxiety, including but not limited to elevated blood pressure,

fatigue, insomnia, depression and general anxiety. Other health issues have been exacerbated as a result of the increased stress and anxiety.

She asserted that at the time, her "primary concern was dealing with [her] medical conditions without regard to a potential lawsuit against defendants." She did not further describe any efforts that she undertook to address those medical conditions and she provided no documentary evidence to support the statements in her certification.

Rutgers opposed plaintiff's motion, arguing that plaintiff's April 15, 2010, letter was "the first and only notification forwarded to Rutgers concerning this alleged incident." UMDNJ likewise opposed plaintiff's motion. On May 24, 2010, plaintiff submitted a second certification in support of her motion. That certification offered a further explanation of the reasons for her failure to comply with the statutory notice requirement governing timeliness.

In plaintiff's second certification, she again asserted that she had not been told that she would need to file a tort claims notice, implying that defendants were obligated to do so and adding that she believed defendants had lulled her into inaction. In addition, she suggested that her first attorney had not explained the statutory requirement about notice and she detailed her unsuccessful efforts to reach him after she had given him the information he asked for following the December 2009 meeting.

Plaintiff also provided further information about the physical and emotional effects that she claimed the disclosure of her personal health information had caused. In addition to shock, stress, anxiety, fatigue and depression, plaintiff explained that her high blood pressure had worsened and that she had "developed serious hypertension which require[d] medication[,] . . . respiratory insufficiency, insomnia, blurred vision, and lack of concentration."

In support of her assertions about these health effects, plaintiff attached a brief doctor's note. Dated May 20, 2010, the note stated:

[Plaintiff] has hypertension that has recently worsened because of anxiety and acute stress reaction. In the past her blood pressure was controlled with lifestyle modification only, but since the recent stressors, she now has to be on oral blood pressure medication. She also has difficulty concentrating and has insomnia secondary to this stress.

It is my opinion that once her stress is reduced, her blood pressure, concentration and insomnia will improve if not resolve completely.

Finally, plaintiff asserted that the public disclosure of her personal health information had adversely affected her relationships with family, friends and professional colleagues. She explained that "I have noticed a marked change in attitude toward me which has hindered my ability to communicate with others" and that she had become "extremely uncomfortable when I attempt to speak publicly, as I am constantly focused on who knows what personal and confidential information about me."

### B.

Following a hearing before the Law Division, plaintiff's motion for leave to file a late notice of tort claim, *see N.J.S.A.* 59:8–9, was granted. In a written opinion expressing the basis for that decision, the trial court recognized that plaintiff's cause of action had accrued on November 24, 2009, when she learned that her health information had been disseminated without her permission. The trial court observed that plaintiff had failed to file her notice of claim within the ninety days permitted by the statute, *see N.J.S.A.* 59:8–8, but noted that her motion for leave to file a late notice of claim had been filed within the one-year period allowed by the statute for that purpose, *N.J.S.A.* 59:8–9, and that the motion could be granted upon a finding that there were extraordinary circumstances for the failure to make a timely filing, *ibid.*

Referring to the statutory standard by using the phrases extraordinary circumstances and exceptional circumstances interchangeably, the trial court found that the record sufficed. In particular, the trial court considered the medical evidence of plaintiff's physical condition as described in her doctor's note and her certification, which the court described as the "deterioration in her psychological and physical health" and the "negative impact in

her personal and professional relationships with family, friends and colleagues."

In addition, the trial court credited plaintiff with promptly seeking legal advice from her first attorney and attending the December 2009 meeting with defendants accompanied by that attorney. Citing prior decisions of this Court, *see Beauchamp v. Amedio*, 164 *N.J.* 111, 751 *A.*2d 1047 (2000), and of the Appellate Division, *see Ohlweiler v. Twp. of Chatham*, 290 *N.J.Super.* 399, 675 *A.*2d 1176 (App.Div.1996), the trial court reasoned that the failure of plaintiff's attorney to advise her of the requirements of the Tort Claims Act was an appropriate consideration bearing on the timeliness of a notice. The trial court summarized its conclusions and granted plaintiff's motion because it was "convinced that in accordance with the case law, [plaintiff] did everything she could to protect her rights and not simply within a reasonable time of the accrual of her claims, but within the 90 day notice period."

Moreover, the trial court found no persuasive arguments that defendants would suffer prejudice, observing that the motion was filed within two months after the expiration of the ninety-day period. Although conceding that "[s]ubstantial compliance is not a substitute for the strict procedural requirements of the Tort Claims Act[,]" the court concluded that "the underlying purposes of the notice provision were satisfied" when defendants were alerted in December 2009 that plaintiff was upset about the public disclosure of her personal information and when she met with them accompanied by an attorney.

Using a totality of the circumstances approach, and finding no evidence that defendants were prejudiced by the delay, the trial court concluded that the record sufficed to relieve plaintiff from the bar imposed by the statute's requirement that the notice be filed within ninety days.

## C.

In a divided decision, the Appellate Division affirmed. Two Appellate Division judges commented that granting or denying

permission to file a late notice of claim is a matter left to the sound discretion of the trial court and reasoned that the trial court did not abuse its discretion in finding that there were sufficient extraordinary circumstances to justify allowing plaintiff to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9. They therefore concluded that the trial court's order granting plaintiff leave to file a late notice of claim should be affirmed.

In reaching that conclusion, the majority rejected the arguments raised by defendants that because plaintiff's alleged physical symptoms were not debilitating, there was nothing that prevented her from filing a timely claim. They faulted defendants for focusing on whether plaintiff's medical conditions were severe enough to preclude her from acting, describing that argument as an inappropriate parsing of the evidence rather than adherence to a totality of the circumstances approach. The majority of the panel asserted that the trial court was not required to find that plaintiff's symptoms rendered her incapacitated and that it was reasonable for the trial court to conclude that "her medical condition had her psychologically stymied and represented an inhibiting and distracting force in her pursuing a timely filing."

Moreover, the majority found no merit in defendants' argument that because plaintiff was physically capable of visiting with and retaining an attorney, she had no excuse for her late filing. In the majority's view, "the fact that plaintiff engaged an attorney early should not be viewed in isolation or necessarily in defendants' favor and was not so perceived by the trial court." In so concluding, the majority rejected defendants' suggestion that the failure to make a timely filing was the fault of plaintiff's attorney and that her exclusive remedy would be an action against her former attorney for malpractice. Although the majority commented that the former attorney's conduct fell below acceptable professional standards, it concluded that the potential legal malpractice remedy was irrelevant to the determination of whether there were extraordinary circumstances to excuse the late filing.

Reasoning in the alternative, the majority concluded that plaintiff had substantially complied with the requirements for notice set forth in the statute. *N.J.S.A.* 59:8–4. Although plaintiff failed to adhere to the requirement of timely formal filing of the notice, they found that she had provided defendants with all of the information that the statute requires. Comparing the information she asserted that she had made known to defendants with that demanded for statutory notice, the majority observed that plaintiff's name and address were known because she was going to be the keynote speaker at World AIDS Day; the name and address of her attorney were known as a result of the December 2009 meeting; the date of the alleged dissemination was identified; her physical injuries were revealed to defendants; and the public entities she deemed to be responsible for the disclosure were present at and participated in the December 2009 meeting.

The majority held that, although the extent of plaintiff's medical expenses was unknown, "[b]ecause all the information necessary to be included in the tort claim notice had been provided, the purpose behind the notification requirement was served." The majority concluded that defendants had enough information to investigate the facts, to correct the practices that gave rise to the claim, and to determine what liability reserves might be required. Finally, because defendants did not advance any argument that they were prejudiced by the untimely filing, the majority found it unnecessary to address that aspect of the trial court's decision.

Judge Fuentes dissented, reasoning that plaintiff's proofs failed to meet the statutory standard requiring that there be extraordinary circumstances to excuse the late filing. In his view, because plaintiff was able to retain an attorney, participate in a meeting with defendants in December 2009, respond to her attorney's request for documents, and persist in her attempts to follow up with her attorney about the status of her claim, she "was not physically or emotionally incapacitated during the critical window of time in which she had to file the required [Tort Claims Act] notice." Contrasting plaintiff's circumstances with precedents in

which courts had found extraordinary circumstances, Judge Fuentes observed that "[t]his is a case about alleged attorney neglect[,]" and reasoned that "[a]ttorney neglect or incompetence does not constitute 'extraordinary circumstances' within the meaning of *N.J.S.A.* 59:8–9."

Finally, Judge Fuentes contended that the majority had improperly circumvented the statutory requirement of extraordinary circumstances by invoking the doctrine of substantial compliance. He commented that the doctrine of substantial compliance might properly be utilized to permit the relaxation of the statute's otherwise strict requirements relating to the information that must be contained in the notice. *N.J.S.A.* 59:8–4. He asserted, however, that there is no support for the suggestion that the doctrine of substantial compliance could similarly be invoked to relax the timeliness requirement of the statute. *See N.J.S.A.* 59:8–8. In his view, the majority had erred by substituting substantial compliance for "extraordinary circumstances."

This matter therefore comes before us as of right because of the dissent in the Appellate Division. *R.* 2:2–1(a)(2).

### III.

In their arguments before this Court, the parties and amicus curiae New Jersey Association for Justice (NJAJ) present divergent positions about the proper interpretation of the statutory language authorizing a court to grant leave for filing a late notice of tort claim based on extraordinary circumstances and about the role that the doctrine of substantial compliance plays in the tort claims analysis.

Plaintiff urges us to affirm the judgment of the Appellate Division majority, arguing that it correctly concluded that the trial court did not abuse its discretion by granting her relief from strict compliance with the statute's ninety-day limit on filing a tort claims notice. She asserts that the majority of the Appellate Division, like the trial court, correctly evaluated the factual record to find that her circumstances were extraordinary. As support for

her argument, she points to the physical and psychological effects that she suffered, including the evidence that her medical condition worsened following her discovery of the disclosure; her diligent pursuit of her claim during the ninety-day notice period by retaining counsel and attending a meeting to discuss her claim with defendants; her further deteriorated medical condition following that meeting; and her "psychologically stymied" reaction to the combination of her medical condition and the associated stigma and trauma of having her personal information disclosed to the public.

In addition, plaintiff asserts that it was appropriate for the court to consider other factors in the extraordinary circumstances analysis, including her assertions that she was unaware of the formal requirements of the Tort Claims Act; that she was led by defendants to believe that the matter would be amicably resolved; and that her first lawyer was inattentive and ineffective. In summary, plaintiff argues that "[t]hese factors all combined to distract and inhibit [her] from pursuing a timely filing as she found herself severely debilitated through an ever-worsening downward spiral of shame, humiliation, shock, trauma, and sickness[,]" which, in combination, should be sufficient to meet the statutory test of extraordinary circumstances.

Defendants ask this Court to reverse the judgment of the Appellate Division's majority and agree instead with Judge Fuentes that plaintiff's proofs do not satisfy the statutory requirements for filing a late notice of tort claim. They argue that plaintiff did not suffer from medical or emotional trauma sufficient to prevent her from filing a timely notice of claim or to constitute "extraordinary circumstances;" that neither her own ignorance of the Tort Claims Act's notice requirements nor her first attorney's inattention justifies allowing her to file her claim out of time; and that the doctrine of substantial compliance that the panel's majority utilized in its reasoning cannot meet the statute's mandate.

Defendants raise three related arguments concerning the sufficiency of plaintiff's claims that extraordinary circumstances pre-

vented her from filing a timely notice. First, they assert that the alleged medical and emotional effects that plaintiff catalogued were not severe enough to prevent her from acting. As part of their attack on plaintiff's proofs, they criticize the sufficiency of the medical document that plaintiff submitted, characterizing it as a net opinion. They argue that the doctor's note merely refers to vague complaints, such as hypertension, anxiety and stress, that these conditions are common in the general population, and that nothing in the record elevates them to the level of severity required by statute. Defendants therefore assert that plaintiff's complaints fall short of the far more compelling medical proofs that courts have found necessary to support a finding of extraordinary circumstances.

Second, defendants argue that these physical and emotional effects did not interfere with plaintiff's ability to file a timely notice of claim. They point out that throughout the ninety-day time frame fixed by the statute, plaintiff was not "stymied" as the Appellate Division's majority described it, but actively pursued her complaint by finding and retaining counsel, meeting with representatives of defendants, providing additional information requested by her lawyer and, according to her own estimate, telephoning him "at least ten times" to follow up on the status of her matter.

Third, defendants assert that neither plaintiff's ignorance of the statutory requirements nor her first attorney's asserted incompetence and inattention to the statutory time frame can equate with extraordinary circumstances and they urge this Court to reject the Appellate Division majority's reliance on the doctrine of substantial compliance as error.

Amicus curiae NJAJ, like plaintiff, argues that the judgment of the Appellate Division majority should be affirmed. In short, it asserts that the majority correctly determined that the trial court did not abuse its discretion in granting plaintiff's motion; that plaintiff's medical condition, which included increased anxiety, stress, respiratory insufficiency, insomnia, blurred vision, and a lack of concentration, was both substantiated by her physician and

adequate to constitute extraordinary circumstances; and that the majority correctly referred to the doctrine of substantial compliance in addressing issues of substantial prejudice and in concluding that granting plaintiff relief would advance the statute's policy objectives.

## IV.

■ We begin with a brief review of the statutory framework that governs our analysis and with an evaluation of the decisions of this and other courts that have considered the meaning and intent of the statute's "extraordinary circumstances" exception. As we have recently reiterated, *see Rogers v. Cape May Cnty. Office of the Pub. Defender,* 208 *N.J.* 414, 420, 31 *A.*3d 934 (2011), claims against a public entity for damages are governed by the Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3. The Act both defines the extent of the Legislature's waiver of sovereign immunity and "establishes the procedures by which claims may be brought[.]" *Beauchamp, supra,* 164 *N.J.* at 116, 751 *A.*2d 1047.

■ Among those procedures is the requirement that a timely pre-suit notification about the existence of a claim and its particulars be provided to the defendants. *N.J.S.A.* 59:8–8. That statutory provision, which requires that the notice be filed within ninety days of a claim's accrual, deems a claimant to "be forever barred" if he or she fails to comply with that time frame. *Ibid.* The purpose of the ninety-day deadline is to "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *Lutz v. Twp. of Gloucester,* 153 *N.J.Super.* 461, 466, 380 *A.*2d 280 (App.Div.1977).

■ As we have commented, the "harshness" of the ninety-day requirement is alleviated by the statutory provision that allows the late filing of a notice of a claim under limited circumstances. *See Rogers, supra,* 208 *N.J.* at 420, 31 *A.*3d 934. That

provision fixes the manner of seeking relief and the ground on which it may be granted:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant *showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed* by section 59:8–8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.
>
> [*N.J.S.A.* 59:8–9 (emphasis added).]

By its terms, the statute commits the authority to grant a plaintiff's motion for leave to file late notice "to the sound discretion of the trial court, and [its decision] will be sustained on appeal in the absence of a showing of an abuse thereof." *Lamb v. Global Landfill Reclaiming*, 111 *N.J.* 134, 146, 543 *A.*2d 443 (1988). Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law. *McDade v. Siazon*, 208 *N.J.* 463, 473–74, 32 *A.*3d 1122 (2011).

Central to this appeal is the trial court's decision that the evidence in the record demonstrated that extraordinary circumstances prevented plaintiff from complying with the statute's ninety-day filing requirement. We turn first, then, to an analysis of the meaning of the statutory phrase "extraordinary circumstances."

As originally enacted, the statute did not condition leave for late filing on a showing of extraordinary circumstances, but fixed instead a lower threshold that the court was authorized to use in granting relief. *See Lowe v. Zarghami*, 158 *N.J.* 606, 625–26, 731 *A.*2d 14 (1999). That earlier standard permitted the court to grant leave for the late filing of a notice if the court found that plaintiff had "sufficient reasons" for failing to meet the ninety-day

deadline. *L.* 1972, *c.* 45, § 59:8–9 ("showing sufficient reasons for his failure to file notice"); *see In re Roy,* 142 *N.J.Super.* 594, 597–99, 362 *A.*2d 589 (App.Div.) (setting forth and explaining statutory standard), *certif. denied,* 71 *N.J.* 504, 366 *A.*2d 660 (1976).

In 1994, however, the Legislature amended the Act and replaced that standard, substituting instead the language now used in the statute that conditions relief on plaintiff's demonstration of "extraordinary circumstances." *L.* 1994, *c.* 49, § 5. As we have recognized, in amending the statute, the Legislature intended to "raise the bar for the filing of late notice[,]" *Rogers, supra,* 208 *N.J.* at 428, 31 *A.*3d 934, by eliminating what had previously been "a fairly permissive standard[,]" *Lowe, supra,* 158 *N.J.* at 625, 731 *A.*2d 14, and imposing in its place a "more demanding" one, *ibid.*

Although the Legislature did "not define what circumstances are to be considered 'extraordinary' and necessarily [left] it for a case-by-case determination[,]" *id.* at 626, 731 *A.*2d 14 (internal quotations and citations omitted), there can be no doubt but that its intent was to create a more exacting standard than the one that courts had used prior to the amendment, *see, e.g., Zois v. N.J. Sports & Expo. Auth.,* 286 *N.J.Super.* 670, 675, 670 *A.*2d 92 (App.Div.1996) (observing that statutory change "suggested that the amendment may have signaled the end to a rule of liberality").

█ It is, moreover, in this setting and in the larger context of the clear legislative intent that the waiver of sovereign immunity be limited, that trial courts are authorized to exercise their discretion to grant such leave. The Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself. Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through

excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.

V.

This appeal presents us with two questions, namely, whether plaintiff's evidence sufficed to meet the statutory test for extraordinary circumstances and whether, in the alternative, the doctrine of substantial compliance may be invoked to support relief from the ninety-day filing requirement.

A.

Plaintiff's proofs offered in support of her contention that she met the extraordinary circumstances threshold of the statute consist of her evidence relating to her medical condition and her assertions about the shortcomings of her first attorney. Although to some extent those contentions are related, we address them separately.

First, although there is not an abundance of authority from this Court, or from the Appellate Division, that defines with precision what medical proofs the Legislature intended would be required following the 1994 amendment to the statute, there are some examples that are relevant to this analysis. Published authority from our Appellate Division has generally concluded that medical conditions meet the extraordinary circumstances standard if they are severe or debilitating. *See, e.g., Mendez v. So. Jersey Transp. Auth.*, 416 *N.J.Super.* 525, 533, 6 *A.*3d 484 (App.Div.2010) (relying in part on injuries sustained in motor vehicle accident that required hospitalization); *R.L. v. State–Operated School Dist.*, 387 *N.J.Super.* 331, 341, 903 *A.*2d 1110 (App.Div.2006) (finding extraordinary circumstances test met by high school student who contracted HIV infection from sexual relationship with teacher and who was preoccupied with thoughts of death); *Maher v. Cnty.*

*of Mercer,* 384 *N.J.Super.* 182, 189–90, 894 *A*.2d 100 (App.Div. 2006) (recognizing that medical condition of cook who contracted staph infection that was so severe that she was treated by induced coma and not expected to survive sufficed for extraordinary circumstances test).

The consistent theme of these decisions is the severity of the medical condition and the consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim. Lesser complaints of a medical nature have been held to fall short of the Act's high standard. *See, e.g., S.P. v. Collier High School,* 319 *N.J.Super.* 452, 466, 725 *A*.2d 1142 (App.Div.1999) (concluding that female high school student's youth, ignorance and learning disability, even when coupled with assurances that her complaint about sexual abuse by another student would be addressed by school authorities, did not constitute extraordinary circumstances); *cf. Keller v. Cnty. of Somerset,* 137 *N.J.Super.* 1, 7 n. 4, 347 *A*.2d 529 (App.Div.1975) (construing pre–1994 statute and rejecting as unsupported trial court's finding that mother's emotional strain following her son's death was debilitating in part because she continued to operate her business and discussed her son's accident with many others thereafter).

Applying these precedents to the record before the Court in this matter, we are constrained to conclude that the medical proofs do not surpass the threshold that the Legislature has created. We reach this conclusion for several reasons. Viewed objectively, plaintiff's asserted medical and emotional conditions are not se-vere, debilitating, or uncommon; for the most part, they are vaguely described complaints of stress and emotional strain that would quite ordinarily follow from learning that one's personal information had found its way to the internet.

Apart from plaintiff's assertions that she was in "absolute shock," depressed, stressed and anxious, there is no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them. On the contrary, the only medical evidence that

plaintiff tendered was the note from her doctor. That note, although listing a variety of medical complaints and conditions, did not attest to their severity, but instead offered the doctor's opinion that all of them were transitory conditions that were expected to resolve completely.

■ Moreover, in engaging in the analysis of extraordinary circumstances, the court's focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period, because that is the time during which the notice should have been filed. Using that focus, however, plaintiff's evidence again falls short. Apart from the fact that her certification is vague about the timing of her medical and emotional complaints, the doctor's note is not tied to the relevant time frame. Instead, that note was authored some six months after plaintiff learned that her personal and confidential information had been released. The doctor, moreover, used language that is not tied to the ninety-day window fixed by the statute. Instead, it suggests that plaintiff's medical complaints arose shortly before the time when the doctor wrote the note, by which time the statutory window had closed.

Nor is there any evidence in the record that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state. Particularly absent is any support in the record for the assertion of the Appellate Division's majority that plaintiff was "psychologically stymied" due to any of her medical or emotional complaints. She never so certified and, objectively viewed, the record demonstrates that plaintiff not only was able to pursue her complaint but was diligent in her efforts. Far from being "stymied" or even impaired in her ability to act, plaintiff recognized she had a complaint, corresponded with those she thought were responsible, found an attorney, met with him, retained him, met personally with representatives of defendants, provided more information to her lawyer in response to his request, and then placed at least ten telephone calls to him in her efforts to proceed.

We therefore cannot agree, based on these proofs, that plaintiff's medical and emotional state rose to the level needed to meet the statutory threshold of extraordinary circumstances so as to excuse her failure to file her notice within the time allotted.

■ However, both plaintiff and the majority of the Appellate Division reasoned that it was appropriate to look beyond her medical and emotional condition and to include the inattention of her first attorney in the evaluation of her proofs of extraordinary circumstances. This argument requires us to consider whether and under what circumstances an attorney's shortcomings can be considered in the timeliness analysis for tort claims purposes.

Decisions of this Court, and of the Appellate Division, have occasionally included fact patterns in which an attorney's behavior was implicated in the evaluation of extraordinary circumstances. Several decisions, although not directly addressing potential attorney malpractice, involved the interplay between the statutory notice requirement and the ability to identify defendants that might or might not be protected by the Act. *See Ventola v. N.J. Veteran's Mem'l Home*, 164 *N.J.* 74, 81–83, 751 *A.*2d 559 (2000) (concluding that patient treated at Veteran's Hospital who reasonably believed it to be federal rather than state facility and promptly filed federal claim did not sleep on rights and demonstrated extraordinary circumstances); *Lowe, supra*, 158 *N.J.* at 629–30, 731 *A.*2d 14 (1999) (concluding that plaintiff who had no reason to know that physician was public employee and who diligently pursued claim demonstrated extraordinary circumstances); *Eagan v. Boyarsky*, 158 *N.J.* 632, 640–42, 731 *A.*2d 28 (1999) (concluding that plaintiff who only knew physician through HMO and was not aware that he was public employee demonstrated extraordinary circumstances); *Allen v. Krause*, 306 *N.J.Super.* 448, 455, 703 *A.*2d 993 (App.Div.1997) (commenting that physician's obscured status as public employee and plaintiff's consequent inability to discover that status might meet extraordinary circumstances test). In each of these cases, there was evidence that plaintiffs were thwarted in their efforts to comply with the

ninety-day time frame because, through no fault of their own or of counsel, correct identification of the defendant as a public entity or public employee was not possible. In those circumstances, application of the statutory test led each court to conclude that plaintiffs were entitled to file a late notice of claim.

However, this Court and the Appellate Division have reached the opposite conclusion, finding claims barred when the identity of the correct defendant was readily discoverable within the ninety days that the statute allows but timely notice was not filed. *See, e.g., Blank v. City of Elizabeth,* 162 *N.J.* 150, 152–53, 742 *A.*2d 540 (1999) (concluding that counsel's failure to investigate identity of owner of pipe plaintiff tripped on, even when coupled with plaintiff's limited command of English, did not constitute extraordinary circumstances); *Leidy v. Cnty. of Ocean,* 398 *N.J.Super.* 449, 454, 457–58, 942 *A.*2d 112 (App.Div.2008) (concluding that failure to ascertain identity of authority responsible for maintaining roadway, in absence of obscuring of identity, was insufficient to meet extraordinary circumstances test). Although not directly commenting on the potential liability of the attorney for negligence, these decisions suggest that the shortcomings of counsel would not support relief from the statutory requirement for timely filing.

The question of the role played in the analysis by an attorney's inattention has been more directly considered in a series of decisions rendered both by this Court and by the Appellate Division. When confronted with an application for leave to file a late notice because of an attorney's inattention, the Appellate Division held that it does not suffice. *See Zois, supra,* 286 *N.J.Super.* at 674, 670 *A.*2d 92. That court concluded that offering as excuses for failing to file a timely notice the assertions that an attorney's secretary misplaced the file and that the attorney did not notice it for months did not constitute extraordinary circumstances. *Ibid.*

The Appellate Division reached the opposite conclusion, however, when the question rested on the adequacy of the lawyer's advice rather than on mere inattention. *See Ohlweiler v. Twp. of*

*Chatham,* 290 *N.J.Super.* 399, 405, 675 *A.*2d 1176 (App.Div.1996). There, the appellate panel considered the circumstances of a plaintiff who sustained an injury and promptly consulted both a medical professional and an attorney. *Id.* at 401, 675 *A.*2d 1176. Based on a review of the medical evidence, her lawyer advised her that the injury was not serious enough to meet the threshold required by the Tort Claims Act, *N.J.S.A.* 59:9–2. *Ibid.* Shortly after the expiration of the Act's ninety-day filing period, however, when plaintiff learned that the injury was far more serious than previously believed and that it qualified as a permanent injury that could be compensable under the Act, she sought leave to file out of time. *Id.* at 401–02, 675 *A.*2d 1176. In affirming the trial court's order granting that relief, the Appellate Division reasoned that plaintiff was diligent in pursuing both medical and legal advice, that she followed her attorney's accurate advice that her injury fell short of the threshold, and that it was the "unusual, unanticipated and unexpected" worsening of her injury that met the statutory test of extraordinary circumstances. *Id.* at 405–06, 675 *A.*2d 1176. Referring to an earlier filing in terms that would equate it with a frivolous pleading, the panel implied as part of its reasoning that the cause of action did not accrue until the medical condition worsened to the point of permanency. *Id.* at 405, 675 *A.*2d 1176.

This Court's seminal decision addressing the implications of an attorney's advice about a tort claim arose in the context of a party who was injured in a motor vehicle accident caused by a New Jersey Transit bus. *See Beauchamp, supra,* 164 *N.J.* at 111, 751 *A.*2d 1047. Within two weeks of her injury, plaintiff consulted a doctor who told her that he could not yet determine whether her injuries would be permanent ones. *Id.* at 114, 751 *A.*2d 1047. Promptly thereafter, she consulted with an attorney, explaining what the doctor had told her. Based on that equivocal medical opinion, the attorney advised her not to file a tort claims notice. *Ibid.* After the ninety-day time period had expired, plaintiff learned that her injuries were serious and permanent. Her

motion for leave to file a late notice was rejected by both the trial and appellate courts. *Id.* at 115, 751 *A.*2d 1047.

This Court reversed. Focusing on the similarity between those facts and the ones described in *Ohlweiler*, we concluded that the Appellate Division's suggestion in *Ohlweiler* that the cause of action did not accrue until the injuries were found to be permanent and serious had misled the attorney in *Beauchamp* into believing that an earlier filing of a tort claims notice would not be permitted. *Id.* at 122–23, 751 *A.*2d 1047. Finding that the attorney's advice was incorrect but that it was justified based on that reading of *Ohlweiler*, and crediting plaintiff for promptly seeking medical attention and legal advice, this Court concluded that plaintiff had met the statute's extraordinary circumstances exception. *Ibid.*

More recently, the Appellate Division has recognized that the reasoning of *Beauchamp* does not authorize a finding of extraordinary circumstances every time an attorney misperceives the date of accrual of a cause of action. *Bayer v. Twp. of Union*, 414 *N.J.Super.* 238, 259, 997 *A.*2d 1118 (App.Div.2010). As that appellate panel observed, in *Beauchamp* this Court specifically found that the state of the law concerning accrual for tort claims purposes was confused because of the language utilized in *Ohlweiler*. As a result, the Appellate Division recognized that in *Beauchamp*, we did not rely on the error of a particular attorney, but instead we found that general confusion about the law created sufficient reason for the attorney's ultimately inaccurate advice. *Id.* at 260–61, 997 *A.*2d 1118; *see also Rogers, supra,* 208 *N.J.* at 429–30, 31 *A.*3d 934 (observing that record was silent concerning attorney's reason for delay in filing and suggesting that general confusion about state of law could be relevant to extraordinary circumstances analysis). Comparing those facts to the record before it, the Appellate Division in *Bayer* held that because there was no similar confusion about the time of accrual of a false arrest claim, the incorrect advice from an attorney concerning the date on which the tort claim accrued did not suffice to meet the

extraordinary circumstances standard. *Bayer, supra,* 414 *N.J.Super.* at 260–61, 997 *A.*2d 1118.

In this appeal, plaintiff asks us to conclude that her prompt action and her repeated efforts to follow up with her first attorney should tip the balance in favor of permitting her to file a late notice of claim. Although she points as well to the failure of the attorney, or defendants, to alert her to the statutory filing requirements, we find no basis on which to read into the statute any requirement that plaintiff be advised of the technical requirements for pursuing a claim, *see Rogers, supra,* 208 *N.J.* at 428, 31 *A.*3d 934 (observing that "ignorance of the ninety-day deadline" does not excuse late filing), and no support for her suggestion that defendants lulled her into inaction, *cf. McDade, supra,* 208 *N.J.* at 480–81, 32 *A.*3d 1122 (rejecting argument that facts presented rare case of manifest injustice in which equitable estoppel might be invoked based on claim that defendants had misled plaintiffs about material issue). Instead, for purposes of our analysis, we presume that plaintiff's first attorney was woefully inattentive to her matter, regardless of whether he was aware of the statutory requirement for filing of a notice or not.

The question before this Court is whether an attorney's inattention, or even an attorney's malpractice, constitutes an extraordinary circumstance sufficient to excuse failure to comply with the ninety-day filing deadline. Although we do not suggest that malpractice is usual, expected, anticipated or ordinary in any sense, we cannot agree that an attorney's inattention to a file, or even ignorance of the law, equates with extraordinary circumstances for tort claims purposes. *See Zois, supra,* 286 *N.J.Super.* at 674, 670 *A.*2d 92 (observing that attorney inattention might have sufficed under pre–1994 statute but could not meet extraordinary circumstances test). Our decision in *Beauchamp* was not based on the attorney's shortcoming, but rather on a reasonable, albeit ultimately mistaken, perception of the Act's requirements derived from a published Appellate Division opinion that had, unfortunately, led to confusion.

Our role in this matter is as it always is, to interpret the intent of the Legislature as expressed in the statutory language. *Hubner v. Spring Valley Equest. Ctr.*, 203 *N.J.* 184, 193–95, 1 *A.*3d 618 (2010); *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009). In doing so in the context of this appeal, we are guided by the fact that the Legislature raised the statutory bar for demonstrating a basis on which to bypass the ninety-day limit from sufficient to extraordinary, sending a strong message that, consistent with the Act's limited waiver of sovereign immunity and our usual strict construction of its requirements, the relief should be granted less frequently. In that context, we are called upon as well to create rules of broad application that will serve to guide both litigants and attorneys with clarity.

Were we to agree with plaintiff, we would create an entirely new rule that would permit wide latitude to claimants and counsel to circumvent the statute's clear commands and that would be incompatible with the directive from the Legislature that the circumstances be not merely sufficient excuses, but extraordinary ones. Viewed objectively, plaintiff asks us to conclude that an individual with medical complaints that did not demand immediate attention from any health care provider and that did not significantly interfere with her ability to pursue her cause of action can couple those complaints with an independent claim that her attorney was insufficiently diligent so as to demonstrate extraordinary circumstances. Indeed, viewed objectively, plaintiff's assertions about her attorney are no different from the sort of inattentiveness that our Appellate Division has previously recognized would be insufficient. *See Zois, supra,* 286 *N.J.Super.* at 674, 670 *A.*2d 92.

We do not find in the statutory language an intention that the increased threshold of extraordinary circumstances can be satisfied by coupling an attorney's inattentiveness with otherwise inadequate medical proofs. On the contrary, were we to conclude that inattention or even malpractice of an attorney can serve to vault the statutory threshold for relief, we would be replacing

circumstances that rendered a plaintiff incapable of complying with the time frame with a standard more in the nature of inadvertence, negligence, inattentiveness or ignorance.

The Legislature's waiver of sovereign immunity remains a limited one and we are not free to expand that waiver beyond its statutorily-established boundaries. Nor can we permit sympathy for a particular plaintiff to obscure the statutory standard to the point of obliterating it. Yet, were we to agree with the trial court and the appellate court's majority, or were we to follow the heartfelt call of our dissenting colleagues, that would be the result. In an effort to secure justice for a single plaintiff, we would create a mechanism by which any plaintiff, merely by pointing to a lawyer's failings, could bypass the statutory test for timeliness. The Legislature has commanded that relief be granted only in circumstances that are extraordinary. We find no basis in the statute to substitute for that command the sort of unlimited and unbounded approach that the Appellate Division's majority and our dissenting colleagues think appropriate.

We do not leave this plaintiff without a remedy nor does the application of the standard chosen by our Legislature deprive her of justice. To the extent that the claim is barred by the attorney's failing, however, plaintiff's remedy, and her avenue to secure a just result, lies in an action against the attorney for malpractice.

## B.

Arguing in the alternative, plaintiff asks us to conclude that the information that she, aided by her first attorney, in fact provided to defendants during the December 2009 meeting sufficiently apprised them of the existence and particulars of her claim to substantially comply with the statutory notice requirements, thereby making her oral notice a timely one. Although not a position advanced by plaintiff before the trial or appellate court, its inclusion as a part of the reasoning of the Appellate Division's majority opinion and its discussion by Judge Fuentes in his dissent requires that we address it.

It is well settled that the Tort Claims Act demands, at a minimum, the filing of written notice. *N.J.S.A.* 59:8–5 (implying that notice shall be in writing by requiring that "claim shall be signed by the claimant"); *see Velez v. City of Jersey City*, 358 *N.J.Super.* 224, 238, 817 *A.*2d 409 (App.Div.2003), *aff'd on other grounds*, 180 *N.J.* 284, 850 *A.*2d 1238 (2004). As our Appellate Division has previously held, it "is elementary that, at a very minimum, a notice of claim under the Act must be in writing." *Velez, supra,* 358 *N.J.Super.* at 238, 817 *A.*2d 409. The question raised before us is whether the doctrine of substantial compliance can serve to relieve a claimant of this requirement.

Although the doctrine of substantial compliance has occasionally been applied in the tort claims context, it has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute. *See, e.g., Lebron v. Sanchez,* 407 *N.J.Super.* 204, 214–15, 970 *A.*2d 399 (App.Div.2009) (concluding that notice that identified plaintiff and her attorney, set forth date and description of incident, listed injuries and demanded damages, but that did not specifically assert legal theory of negligent supervision substantially complied); *Henderson v. Herman,* 373 *N.J.Super.* 625, 633, 862 *A.*2d 1217 (App.Div.2004) (holding that notice of claim against police dispatch and emergency transport personnel that failed to include names of specific dispatchers substantially complied); *Tuckey v. Harleysville Ins. Co.,* 236 *N.J.Super.* 221, 225, 565 *A.*2d 419 (App.Div.1989) (concluding that public entity was sufficiently apprised of particulars of accident and claim to substantially comply with statutory notice provision).

Our review of the statutory language establishing the essential requirements of a valid notice, *see N.J.S.A.* 59:8–4 (defining requirements), and our consideration of the underlying purposes that are served by the notice compel us to conclude that there is no basis to extend the substantial compliance theory so as to relieve plaintiffs of their obligation to comply with the statute's

requirement that they file a notice, and that it be in writing. On the contrary, as the Appellate Division has recently concluded, "[o]ral notice, even where it contains the elements required by *N.J.S.A.* 59:8–4, does not constitute substantial compliance." *Velez, supra,* 358 *N.J.Super.* at 238, 817 *A.*2d 409; *accord Anske v. Borough of Palisades Park,* 139 *N.J.Super.* 342, 348, 354 *A.*2d 87 (App.Div.1976) ("We consider a writing to be essential under the statute.").

In light of our disposition of this alternative argument, we do not address the sufficiency of the information that plaintiff provided to defendants during the December 2009 meeting. We note only that apart from plaintiff's reference to a cease and desist letter and her generalized descriptions of what was discussed during the meeting with defendants in December 2009, the record on appeal is entirely silent about what, if any, particulars were disclosed prior to the letters sent in April 2010 by plaintiff's new attorney. Even were we to consider the possibility that information provided orally could apprise a defendant as to the particulars of plaintiff's claim sufficiently to constitute notice, we would be constrained to reject the suggestion of the Appellate Division's majority that the record before us met that threshold.

### VI.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for entry of judgment consistent with this opinion.

Chief Justice RABNER and Justice PATTERSON join in Justice HOENS's opinion. Justice LaVECCHIA filed a separate, dissenting opinion in which Justice ALBIN joins.

Justice LaVECCHIA, dissenting.

My colleagues in the majority today take a crabbed view of what constitutes "extraordinary circumstances" to permit a late filing of a written notice of tort claim. Here, plaintiff made repeated calls

to her attorney, who in effect abandoned her while she was in a psychologically debilitated state. Plaintiff did not sit on her rights, nor does anyone argue that defendants were prejudiced. Today's holding is so unduly restrictive that it subordinates the interests of justice to a mere technicality.

First, in the circumstances of this case, the late filing can hardly be considered the fault of plaintiff. The defendants knew of the claim and all aspects of what would be covered in a written notice. Defendants and their attorneys had already met with plaintiff and her attorney within the time frame for defendants' receipt of notice of injury and discussed topics related to the lawsuit. Plaintiff's motion to cure the lack of written notice of the claim was filed shortly after the ninety-day time period elapsed, and it was granted by the trial court—which leads to the second reason I disagree with the majority's holding.

The abuse of discretion standard applies to a review of a trial court's decision on a motion to file a late notice of tort claim under *N.J.S.A.* 59:8–9. *See Lamb v. Global Landfill Reclaiming,* 111 *N.J.* 134, 146, 543 *A.*2d 443 (1988). As this Court has directed, because the standard for extraordinary circumstances sufficient to permit a late filing is "imprecise . . . , each case will depend on its own circumstances." *Lowe v. Zarghami,* 158 *N.J.* 606, 629, 731 *A.*2d 14 (1999). Consistent with the abuse of discretion standard of review, the Appellate Division majority affirmed the trial court's grant of plaintiff's motion to file the late written notice based on the combination of circumstances that unfolded prior to the filing of that motion. The Appellate Division majority was unpersuaded by defendants' efforts to isolate and parse the evidence that, in its totality, convinced the trial court that extraordinary circumstances were present.

In my view, that result advanced the cause of justice. *See Eagan v. Boyarsky,* 158 *N.J.* 632, 642, 731 *A.*2d 28 (1999) (noting interest in hearing public entity tort cases on merits when possible). It allowed a substantial claim to be addressed on its merits when no prejudice to defendants could be identified. Because

the majority applies too harsh a standard for extraordinary circumstances, and because its after-the-fact analysis parsing the individual difficulties that led to plaintiff's late written notice is inconsistent, in my view, with a proper application of an abuse of discretion review of a late-notice motion that has been granted by the trial court, I must respectfully dissent.

## I.

*N.J.S.A.* 59:8–9 provides:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8–8. . . .

The reasons that plaintiff, D.D., had to resort to a filing under *N.J.S.A.* 59:8–9 relate to an asserted invasion of her privacy by defendants, University of Medicine and Dentistry of New Jersey (UMDNJ) and Rutgers, the State University (Rutgers). The nature of her claimed injury, its effect on her, and her effort immediately to curtail further injury while she began to suffer consequences of the asserted invasion of her private health information form the intertwined background to plaintiff's *N.J.S.A.* 59:8–9 filing.

Plaintiff had been asked to be the keynote speaker at Robert Wood Johnson's World AIDS Day event. She agreed, and in a meeting concerning her participation in the event, D.D. disclosed personal health information to representatives from UMDNJ and asked that it be kept confidential. Nevertheless, on November 24, 2009, D.D. discovered press releases issued by UMDNJ and Rutgers that disclosed confidential information about her personal health.

D.D. did not sleep on her rights. She immediately sent a cease and desist letter to UMDNJ and Rutgers demanding a cessation

of all publication of her personal health information and followed that up, promptly in December 2009, with a meeting with high-level representatives of both institutions, including the Dean of the School of Nursing, and their counsel. Accompanied by her attorney at that meeting, UMDNJ and Rutgers officials apologized to D.D. and informed her they were investigating the matter and would address the issue. According to D.D., as found by the trial court based on its review of the affidavit submitted in support of plaintiff's motion, she left the meeting with the impression that the parties wished to resolve the matter.

On the heels of that meeting, plaintiff began to experience the consequences of her distress over what had occurred to her.[1] Her attorney asked her to provide him with more information about how she was feeling and to detail her manifestations of distress. She complied, sending to him the requested additional information, but when she tried to speak to him about the material she had forwarded, she was met with unreturned calls placed to his office telephone number and cell phone number. Although she did manage to speak with two of her attorney's colleagues and was told on each occasion that he was out of the office, involved with other responsibilities, she was reassured that her messages would be forwarded to him. However, after placing numerous calls[2] that were not returned, and believing that the matter was not being resolved as discussed at the December 2009 meeting, she contacted another attorney on April 7, 2010.

---

[1] According to D.D.'s affidavits and other materials submitted in connection with the motion to allow filing of the late notice, she developed severe stress and anxiety, hypertension, insomnia, respiratory insufficiency, blurred vision, and a lack of concentration. That medical evidence was substantiated by her physician, who as the Appellate Division quotes, "noted 'a worsening in her psychological and physical condition.'" D.D. additionally claimed that the disclosure of her personal information had an adverse effect on her personal and professional relationships.

[2] She averred that she attempted to speak to him by phone approximately ten times.

The new attorney met with her on April 14, 2010, and the next day filed a written notice of tort claim, having immediately recognized her prior attorney's omission. It bears mentioning that when that notice was transmitted, UMDNJ's response was that the filing was barred because it was late. Rutgers' response was different; it asked for more information. On April 28, 2010, D.D.'s counsel filed a formal motion to permit filing of a late written notice of tort claim.

The trial court considered the record presented by plaintiff and granted the request to file a late notice of claim. Relying on statutory language, the court found the presence of extraordinary circumstances due to the totality of circumstances that operated to prevent D.D. from timely filing the tort claim notice. The court's decision discussed how D.D.'s medical and physical conditions worsened after the December 2009 meeting. The court found that those conditions stymied her and impeded her actions during the precious few weeks after that December meeting and before the ninety-day clock, of which she was unaware, expired. Included in the totality of circumstances during that period, which the court considered, was the interactions that plaintiff was having with her former attorney. In sum, the reasonableness of plaintiff's actions in immediately acting on her rights, her worsening physical and emotional problems, and her increasingly unsatisfying interactions with her counsel, in combination, contributed to the court's finding extraordinary the overall circumstances facing plaintiff. The court emphasized the "collective impact" of the circumstances with which plaintiff had to grapple. In the exercise of its sound discretion, that court determined plaintiff had established extraordinary circumstances to explain the late filing of the tort claim notice. Therefore, the court granted the motion to permit the late filing. And, from fair review of the trial court's reasoning, it is apparent that the court could not envision a peeling away of each aspect of the obstacles that, in combination, prevented plaintiff's perfect compliance with the notice filing requirement. But, as the trial court found, she did have a face-to-face meeting with officials within approximately thirty days, in which she detailed the injury

to her right to privacy, receiving an apology and a promise of further investigation. Thus, the court further held that UMDNJ and Rutgers suffered no prejudice by allowing a late notice of claim.

The Appellate Division affirmed, finding no abuse of discretion and agreeing that the totality of the facts amounted to extraordinary circumstances. Furthermore, the panel concluded that the purpose of the notification requirement was satisfied because D.D. substantially complied with the requirements. Importantly, the panel's majority emphasized that a totality of the circumstances approach is what is called for in applications to permit a late tort claim notice filed within the one-year period envisioned for such filings. *See N.J.S.A.* 59:8–9. Both Rutgers and UMDNJ argued dismissively about plaintiff's injuries, claiming respectively that her injuries did not incapacitate her from compliance with a timely filing and did not rise to extraordinary circumstances. Separately, they addressed the attorney's initial involvement and the impact of his subsequent inaction. The Appellate Division majority, correctly in my view, would have none of the piecemeal approach advanced by defendants:

> At the outset, we disagree with the approach of both defendants in parsing out the grounds that provided sufficient reasons for satisfying the extraordinary circumstance standard. It is the totality of the circumstances against which plaintiff[']s situation must be measured. The trial court did not indicate that plaintiff was too incapacitated to proceed. However, her medical condition had her psychologically stymied and represented an inhibiting and distracting force in her pursuing a timely filing.
>
> . . . .
>
> The fact that plaintiff engaged an attorney early should not be viewed in isolation or necessarily in defendants' favor and was not so perceived by the trial court.

The majority detailed how plaintiff satisfied all of *N.J.S.A.* 59:8–4's notice requirements [3] and explained that it utilized standards

---

[3] The majority stated plaintiff satisfied the requirements because

(1) plaintiff's name and address were known because she was to be the keynote speaker at the WORLD AIDS day program; (2) the name and address of the law firm representing her was known through the attorney's

applicable to the doctrine of substantial compliance not to dilute the extraordinary circumstances requirement, but rather to assist when "evaluat[ing] the discretion reposed in and exercised by the trial court."

As for the attorney's role, the appellate majority would not permit the fact that she engaged an attorney to preclude her ability to demonstrate extraordinary circumstances. It would not impute the attorney's inattentive conduct to plaintiff and thereby preclude her from a demonstration of extraordinary circumstances. In essence, the appellate majority did not reject the trial court's consideration of the attorney's conduct and interactions with plaintiff as part of the mix of circumstances to be considered, in their totality, when determining whether extraordinary circumstances have been presented.

A dissent in the Appellate Division brought this appeal to us as of right. *See R.* 2:2–1(a)(2).

## II.

A majority of this Court now is persuaded by defendants' dissection of each discrete fact as not constituting, individually, extraordinary circumstances under *N.J.S.A.* 59:8–9. In my view, the Court misapplies the abuse of discretion standard of review and undervalues the totality of the circumstances analysis applied by the trial court in its assessment of the sufficiency of plaintiff's reasons for the late filing. Indeed, out of an apparent overriding concern about opening the floodgates to permitting the late filing of notices of tort claims based on "an attorney's inattention, or even an attorney's malpractice," *see ante* at 156, 61 *A.*3d at 921,

---

presence at the meeting; (3) the date, time, place, and alleged cause of the disclosure through the internet, various press releases, and other media outlets was fixed at November 24, 2009; (4) plaintiff had suffered injuries because of this privacy invasion disclosing confidential health information, the full extent of which were unknown; (5) the public entities responsible for the injuries were present and participated at the meeting; and (6) the extent of any medical expenses were presently unknown.

the majority elevates this one aspect of the events that led to plaintiff's failure to perfect compliance with *N.J.S.A.* 59:8–4, and then is dismissive of its role.

The majority's approach is unduly restrictive. Our courts recognize that extraordinary circumstances should be evaluated on a case-by-case basis, *see O'Neill v. City of Newark*, 304 *N.J.Super.* 543, 551, 701 *A.*2d 717 (App.Div.1997), and I believe the facts here, when considered together, are sufficient to justify the trial court's decision. Substantive communications and a meeting between the parties, with counsel present, took place before the ninety days elapsed and covered all aspects of what a notice of tort injury must impart to the public entities involved, *see N.J.S.A.* 59:8–4, except that it was not accomplished in writing. Rather, it was transmitted in face-to-face discussion between the parties and their counsel. I am not convinced that in order to demonstrate extraordinary circumstances a plaintiff must show that she was physically or mentally unable to take any steps to perfect her claim. That is an interpretation of extraordinary circumstances that seems unduly harsh and overly restrictive of the statutory safety valve allowed by *N.J.S.A.* 59:8–9. Moreover, I see no evidence that when the Legislature heightened the standard from "sufficient reasons" to "extraordinary circumstances" that such physical or mental incapacities were meant to become the necessary required showing for exceptional circumstances.

The standard of exceptional circumstances has been around since 1994, and not until today do we find a court, let alone this Court, now demanding that a plaintiff's physical or mental condition, viewed in isolation from all other events transpiring in plaintiff's life, including her interactions with defendants and with counsel, must be so deteriorated that only the comatose or emotionally paralyzed plaintiff can possibly present extraordinary circumstances. Simply because our prior case law involved extreme examples of physical or emotional incapacitation does not stand to reason that a trial court cannot find other combining circumstances to be extraordinary. In sum, I do not believe a

plaintiff's injuries should be viewed in isolation, and I find the majority's holding—that they must be—too restrictive of a standard that was meant to be left to the trial courts to determine on a case-by-case basis.

I also believe that the negligence of D.D.'s first attorney should not be viewed in isolation. It is true that simple attorney negligence alone is not enough to warrant extraordinary circumstances. *Zois v. N.J. Sports & Exposition Auth.*, 286 *N.J.Super.* 670, 674, 670 *A.*2d 92 (App.Div.1996) (finding no extraordinary circumstances where attorney's secretary misplaced file). However, since when did we become inured to utter neglect by an attorney? Has attorney malpractice and abandonment become so utterly ordinary? We should not stop viewing as extraordinary inattention by an attorney that arguably approaches unethical conduct. In my view, what plaintiff experienced with her first attorney involves more than simple attorney negligence; it implicates total and surprising attorney neglect after extensive engagement with plaintiff and defendants. Plaintiff's attorney's conduct should factor into the examination of her circumstances as they, in combination, were presented to explain why her failure to file a timely written notice of claim, in fact, was uniquely challenging and did constitute extraordinary circumstances.

This Court has recognized extraordinary circumstances where an attorney did not file a notice of claim due to legal confusion about the accrual date of injury. *Beauchamp v. Amedio,* 164 *N.J.* 111, 121–23, 751 *A.*2d 1047 (2000). In that case, the attorney gave incorrect legal advice, which resulted in a procedurally barred claim. *Id.* at 122, 751 *A.*2d 1047. Notably, Justice Long pointed out that the plaintiff "did everything she could to protect a potential claim." *Ibid.* So too here, notwithstanding the majority's effort to box our holding in *Beauchamp.* *Ante* at 156–57, 61 *A.*3d at 921–22. D.D. consulted a lawyer and with that attorney met with the defendants, showing a clear intent to pursue the matter. She thereafter repeatedly tried to contact her attorney to no avail. Rather than receiving incorrect advice, she received no advice or

assistance at all when it came to completing the filing of a written notice. I would find that receiving no advice or assistance with that filing is similar to receiving incorrect advice and is unlike an attorney misplacing a file. *See Zois, supra,* 286 *N.J.Super.* at 674, 670 *A.*2d 92.

With those reasons in mind, I find puzzling the majority's analysis and can only view it as an example of a failure to give proper application to the abuse of discretion standard. Judicial discretion is

the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case. [*State v. Madan,* 366 *N.J.Super.* 98, 109, 840 *A.*2d 874 (App.Div.2004) (citation omitted).]

And, importantly, we have previously held that courts should review "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." *Lowe, supra,* 158 *N.J.* at 629, 731 *A.*2d 14 (internal quotations and citations omitted). Thus, even were one to concede that this case is close and could arguably have been decided at the trial court in either party's favor, with the facts of this case and the standard of review in mind, I certainly cannot say that the trial court failed to exercise sound discretion. It is the trial court's exercise of discretion that should "be sustained on appeal in the absence of a showing of an abuse thereof." *Lamb, supra,* 111 *N.J.* at 146, 543 *A.*2d 443. Although the majority tries mightily to portray this case as one involving legal error, claiming that the trial court misunderstood the legal standard, I am not persuaded by the effort to mask a simple re-exercise of discretion by this Court.

Respectfully, I must dissent.

Justice ALBIN joins in this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices HOENS and PATTERSON—3.

*For dissentment*—Justices LaVECCHIA and ALBIN—2.