**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0724-18T1

ANTOINETTE MARRA,

      Plaintiff-Respondent,

v.

HOPATCONG SENIOR CENTER
and BOROUGH OF HOPATCONG,

      Defendants-Appellants,

and

HOPATCONG SENIORS, INC.,
LARRY D. WHITE, COUNTY OF
SUSSEX, and STATE OF NEW
JERSEY,

      Defendants.

_____

        Submitted July 16, 2019 – Decided July 26, 2019

        Before Judges Vernoia and Mayer.

        On appeal from the Superior Court of New Jersey, Law
        Division, Sussex County, Docket No. L-0250-18.

Dorsey & Semrau, LLC, attorneys for appellants (Fred C. Semrau, of counsel; Edward R. Pasternak, on the briefs).

Law Offices of James C. De Zao, PA, attorneys for respondent (James C. De Zao, III, on the brief).

PER CURIAM

Defendants Hopatcong Senior Center and Borough of Hopatcong appeal from a September 6, 2018 order granting leave to file a late notice of tort claim on behalf of plaintiff Antoinette Marra and denying their motion to dismiss the complaint. We reverse.

The relevant facts are as follows. On September 26, 2017, plaintiff tripped and fell on defendants' property. She suffered a broken arm, fractured hip, and other injuries. Following her fall, plaintiff had hip replacement surgery. After the surgery, plaintiff was transferred to a nursing home, where she spent the next two months recuperating. She was discharged from the nursing home on November 25, 2017, and began in-home care a few days later.

Plaintiff first sought legal counsel to pursue claims against defendants in March 2018. Plaintiff admitted she was unaware of the ninety-day time period within which to file a notice of tort claim against defendants. Plaintiff mistakenly believed she had twenty-four months to file a lawsuit.

On May 18, 2018, plaintiff filed a personal injury complaint and motion for leave to file a late notice of tort claim.[1] The motion was filed four and one-half months after the deadline for timely filing a notice of tort claim.[2]

In her motion to file a late notice of tort claim, plaintiff alleged she suffered from various medical conditions, constituting exceptional circumstances and warranting acceptance of her late notice of claim. Defendants opposed the motion and filed a cross-motion to dismiss plaintiff's complaint.

After hearing counsels' argument, the judge denied defendants' cross-motion and granted plaintiff's motion. The judge determined plaintiff suffered numerous health issues after her hip replacement surgery, precluding her ability to timely pursue her personal injury claims against defendants.

According to the judge's written statement of reasons, "[p]laintiff has alleged and the court finds that she was so incapacitated, both physically and mentally, that she was unable to file a notice within [ninety] days." In support of his finding of extraordinary circumstances to support the filing of a late notice of tort claim, the judge explained:

> the record reflects that [p]laintiff was diagnosed with Major Depressive Disorder, was bedridden at all times

---

[1] Plaintiff never served defendants with the notice of tort claim.

[2] The ninety-day deadline expired on December 26, 2017.

A-0724-18T1

except when she was in physical therapy, and could not function without assistance from the staff. Plaintiff also had difficulty keeping food down and could not complete basic tasks of personal hygiene or sitting in a chair without help. Plaintiff alleges she was unable to think of anything other than recovering. This is supported by her diagnosis report, her Assessment, and her Functional Abilities and Goals Admission record. Plaintiff had cataract surgery within a few days of the end of the [ninety]-day period, and she remained confined to her home for an extended period of time thereafter . . . [p]laintiff was expected to need home nursing care for a further eight weeks or more – a period that extended far beyond the [ninety]-day filing limit. The court finds these limitations sufficient to qualify as "extraordinary circumstances."

The judge found defendants "have not proved [they] would be prejudiced by the filing of a late claim." The judge expressly did not "rely on [p]laintiff's ignorance of the [ninety]-day deadline to reach [the] conclusion that extraordinary circumstances exist."

On appeal, defendants argue plaintiff's motion for leave to file a late notice of tort claim should have been denied because she failed to establish extraordinary circumstances in accordance with the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1–1 to 12–3. Defendants contend plaintiff's medical issues were not so severe or debilitating as to preclude her filing a timely notice of tort claim. Because plaintiff failed to demonstrate extraordinary circumstances, defendants assert their motion to dismiss plaintiff's complaint should have been

4

granted. We review an order granting or denying a motion for leave to file a late notice of claim under the TCA for an abuse of discretion. See D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019) (noting N.J.S.A. 59:8–9 leaves the determination of whether a late notice may be filed to "the discretion of a judge of the Superior Court").

The TCA provides "broad but not absolute immunity for all public entities." Jones v. Morey's Pier, Inc., 230 N.J. 142, 154 (2017) (quoting Marcinczyk v. N.J. Police Training Comm'n, 203 N.J. 586, 597 (2010)). The TCA's "guiding principle" is that "immunity from tort liability is the general rule and liability is the exception." Ibid. (quoting D.D., 213 N.J. at 134).

The TCA "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011). N.J.S.A. 59:8-3 provides, "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented" to the appropriate public entity in a written notice of claim. See also N.J.S.A. 59:8-4 to -7. "A claim relating to a cause of action . . . shall be presented . . . [no] later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8.

A-0724-18T1

If a plaintiff misses the ninety-day deadline, a notice of claim may be filed up to a year after the claim accrues, but only if "extraordinary circumstances" excuse the delay and the public entity would not be "substantially prejudiced." Lowe v. Zarghami, 158 N.J. 606, 624-25 (1999); see also O'Donnell, 236 N.J. at 345-46. "The phrase 'extraordinary circumstances' was added to the statute in 1994" to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding' one." Beauchamp v. Amedio, 164 N.J. 111, 118 (2000) (quoting Lowe, 158 N.J. at 625). The TCA does not define "extraordinary circumstances," requiring courts to determine, on a case-by-case basis, whether "extraordinary circumstances" exist based on the facts presented. Lowe, 158 N.J. at 626.

In finding "extraordinary circumstances" based on a plaintiff's medical condition, courts have looked to the "severity of the medical condition and the consequential impact" on the claimant's ability to pursue a claim. D.D., 213 N.J. at 150; see also Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533-35 (App. Div. 2010) (determining plaintiff's injuries and memory loss from a car accident, requiring weeks in the hospital, constituted extraordinary circumstances); R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 340-41 (App. Div. 2006) (finding extraordinary circumstances where a student, who

contracted HIV from a teacher, was preoccupied with thoughts of death); Maher v. Cty. of Mercer, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (finding extraordinary circumstances based on plaintiff's induced coma and low expectation of survival).

Here, plaintiff failed to demonstrate that her medical issues were so "severe, debilitating, or uncommon" that she was unable to contact an attorney to pursue her claims against defendants. D.D., 213 N.J. at 150. Plaintiff offered her certification and the certification of her former daughter-in-law, describing plaintiff's recovery from her injuries and her depressed mental state during the recovery period. Nowhere in the record is there any medical evidence from a physician that plaintiff was physically or mentally unable to contact an attorney to file a timely notice of claim.

Plaintiff was bedridden from September to November 25, 2017, the date of her discharge from the nursing home. However, upon her discharge from the nursing home, plaintiff still had thirty days within which to file a timely notice of claim. There is no evidence in the record that plaintiff was bedridden after she was discharged from the nursing home. While plaintiff required assistance with her activities of daily living, she suffered no medical condition so severe and debilitating as to impact her ability to pursue her personal injury claims.

Requiring assistance with bathing, dressing, and eating are common after surgery. Plaintiff's depression during her extended recovery period was not atypical, and she was treated for her depression. Plaintiff had ample opportunity after her discharge from the nursing home to seek assistance from her home care providers or her former daughter-in-law to pursue her personal injury claims in a timely manner.

Plaintiff states she was on multiple pain medications during the ninety-day time period for filing a notice of tort claim, implying she was unable to pursue her claims as a result of these medications. However, there is no evidence in the record that the medications compromised plaintiff's cognitive ability. The general descriptions offered by plaintiff of her post-injury pain, need for assistance with activities of daily living, and resulting depression are insufficient to qualify as extraordinary medical conditions allowing the late filing of a notice of claim. See D.D., 213 N.J. at 150.

The records provided by plaintiff in support of her motion and relied upon by the motion judge contain self-serving and subjective statements of plaintiff's pain and depression. The records are devoid of any medical opinion that plaintiff suffered from a severe or debilitating medical condition that precluded her ability to seek legal counsel prior to December 26, 2017. Under the

circumstances, specifically the lack of medical or psychological treatment records, the judge mistakenly assumed facts regarding plaintiff's condition not supported by the record to conclude plaintiff demonstrated extraordinary circumstances justifying the late notice of claim.

Because plaintiff failed to demonstrate extraordinary circumstances, we reverse the judge's order allowing plaintiff to file a late notice of tort claim. We remand the matter for the judge to enter an order granting defendants' motion and dismissing plaintiff's complaint.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0724-18T1