NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1488-19T1

EILEEN McNELLIS-WALLACE
and MAURICE WALLACE,
her husband,

    Plaintiffs,

v.

JOSEPH HOFFMAN, JR.,
ESQUIRE and LAW OFFICES
OF HOFFMAN DIMUZIO,
a Partnership of Professional
Corporations, i/j/s/a,

    Defendants/Third-Party
    Plaintiffs-Respondents,

v.

GARY D. GINSBERG, ESQUIRE
and GINSBERG & O'CONNOR, PC,

    Third-Party Defendants-
    Appellants.

_____

**APPROVED FOR PUBLICATION**

**July 31, 2020**

**APPELLATE DIVISION**

       Argued telephonically February 4, 2020 -
       Decided July 31, 2020

       Before Judges Fisher, Accurso and Rose.

On appeal from an interlocutory of the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1429-18.

Jeffrey Grudko argued the cause for appellants.

Paul A. Carbon argued the cause for respondents (Margolis Edelstein, attorneys; Paul A. Carbon and Kyle L. Wu, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

This case is less complicated than it appears. Plaintiff Eileen McNellis-Wallace had a laparoscopic hysterectomy at Kennedy University Hospital in August 2013. The doctor who performed the surgery, Anthony Salerno, advised plaintiff immediately afterward that he had nicked her bowel when a piece of robotic equipment failed. Two months later, plaintiff retained defendant Joseph Hoffman, Jr., of Hoffman Dimuzio to represent her in a malpractice action against Salerno. Two days after meeting with plaintiff, Hoffman drafted a "memo to file" labeled "urgent," noting "we may have to notify JFK Hospital by a Tort Claims Notice because I believe half of that facility are doctors that are associated with the State of New Jersey."

The following day, Hoffman's office served a timely tort claim notice. Unfortunately, Hoffman's staff read his memo literally and served the notice

on Kennedy, a private entity, and not on Dr. Salerno or his employer, Rowan University. Hoffman never followed-up to ensure the tort claim notice was properly served.

Twenty months later, in June 2015, Hoffman's firm wrote to plaintiff advising it would not file any complaint on her behalf as lawyers there were convinced "we cannot be successful in any lawsuit against either the manufacturer or the surgeon." The firm advised plaintiff of the impending end of the two-year limitations period and recommended other counsel she might consult for a second opinion.

On the last day of the limitations period, third-party defendant Gary D. Ginsberg of Ginsberg and O'Connor, P.C., filed an eighteen-count complaint against Dr. Salerno and Kennedy, among others. Dr. Salerno answered in October, raising plaintiff's failure to comply with the Tort Claims Act as an affirmative defense and listing the State as his insurance carrier on his accompanying case information statement.

Several months later, in May 2016, Dr. Salerno moved to dismiss for failure to file a timely tort claim notice. Plaintiff cross-moved for leave to file a late claim notice based on extraordinary circumstances. The trial court acknowledged the parties disputed when plaintiff learned that Dr. Salerno was

a public employee, with Dr. Salerno averring he told plaintiff of his status when she visited him in his office, which displayed a Rowan University logo on the door, and that he always wore a name tag denoting his status, and plaintiff asserting she only learned of the doctor's status when he filed his motion to dismiss. The judge denied plaintiff's motion to permit a late claim and dismissed the complaint.

Assuming for purposes of the motion that plaintiff didn't know Dr. Salerno's public employee status when he treated her, the judge found plaintiff received actual notice of his status when Dr. Salerno filed his answer in October, which would make January 14, 2016, the last day for filing the ninety-day tort claim notice. The judge found no extraordinary circumstances to justify the late filing.

Ginsberg was not aware when he made the late claim motion that Hoffman had served a tort claim notice on Kennedy in October 2016, having not been provided a copy of it by Hoffman. When Ginsberg finally learned of that fact in April 2018, he moved to reinstate the medical malpractice action. That motion was unsuccessful, leading to plaintiff's filing of a complaint for legal malpractice against Hoffman in this action. When Hoffman answered the complaint, he included a third-party complaint against Ginsberg, plaintiff's

A-1488-19T1

attorney in the action, for contribution under the Joint Tortfeasors Contribution Law and common law indemnification.

Ginsberg moved to dismiss Hoffman's third-party complaint, arguing Supreme Court precedent bars claims by a lawyer against his successor, see Olds v. Donnelly, 150 N.J. 424, 443-44 (1997), and that Hoffman's failure to file a proper tort claim notice doomed plaintiff's claim against Salerno before Ginsberg entered the picture. The judge agreed. Relying on Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 72-73 (2004), in which the Court held that for successive lawyers to be joint tortfeasors, they must share joint liability for the same injury to the plaintiff, the judge rejected Hoffman's argument that he and Ginsberg committed the same tortious act of failing to file a timely tort claim notice.

The judge explained that based on Ginsberg having been retained only several weeks before the running of the statute,

> clearly he had no ability to file a tort claims [notice] within 90 days of the date of the injury, which is the August 12th, 2013 date or to file for extraordinary relief for late filing within one year of that date when he was not engaged until two weeks or so before the Statute of Limitations expired.
>
> So, even if he had a duty, it was a different one and it's a different injury.

A-1488-19T1

Hoffman filed a motion for reconsideration, claiming the court overlooked a critical finding by the judge who dismissed plaintiff's medical malpractice action against Dr. Salerno, namely that plaintiff was not on notice that Dr. Salerno was a public employee until he filed his answer in October 2015. Relying on Lowe v. Zarghami, 158 N.J. 606 (1999), and Eagan v. Boyarsky, 158 N.J. 632 (1999), Hoffman argued plaintiff's lack of knowledge tolled the accrual of her cause of action until the date of Dr. Salerno's answer, meaning Ginsberg had until January of 2016 to file a tort claim notice on plaintiff's behalf. Because Ginsberg did not file a tort claim notice, Hoffman claimed Ginsberg injured plaintiff in the same way Hoffman did, making them joint tortfeasors for purposes of the contribution law.

Ginsberg countered that Lowe and Eagan addressed extraordinary circumstances for late filing, not tolling the accrual of a cause of action, and that there is no support in the case law for finding extraordinary circumstances when the plaintiff's lawyer filed a timely tort claims notice on the wrong entity as Hoffman did here. Ginsberg also noted that the other judge did not know, when she assumed for purposes of the motion that Dr. Salerno's answer was plaintiff's first notice that Dr. Salerno was a public employee, that Hoffman had already filed a timely tort claim notice, but served it on the wrong entity.

6

The motion judge granted Hoffman's motion for reconsideration and denied Ginsberg's motion to dismiss the third-party complaint.  The judge found her prior "presumption" that the one-year period for a late claim notice pursuant to N.J.S.A. 59:8-9 had already expired by the time Ginsberg entered the case "is contrary to a different judge's finding" that plaintiff was only on notice of Dr. Salerno's status when he filed his answer in October, thus making a tort claim notice still timely in January 2016.

The judge found she did not address whether Dr. Salerno had complied with the dictates of Lowe and Eagan and only "presumed compliance," most likely because Hoffman realized immediately that he needed to file a tort claim notice to protect plaintiff's claim against Dr. Salerno.  The judge concluded reconsideration was appropriate because she had not considered whether "plaintiff's medical malpractice claims depended in part on the extent to which the plaintiff herself knew that Dr. Salerno was a publicly employed physician." The judge concluded "the extent of plaintiff's notice was not previously determined in this case and it should not be Mr. Hoffman's state of mind." Satisfied that plaintiff's knowledge of Dr. Salerno's status was a factual issue in dispute, the judge reversed course and denied Ginsberg's motion to dismiss the third-party complaint.  Ginsberg's motion for reconsideration was denied.

7

We granted Ginsberg's motion for leave to appeal and now reverse, finding the judge was right the first time when she dismissed Hoffman's third-party complaint.

Our review of a trial judge's decision on a motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a cause of action is de novo, without deference to the judge's legal conclusions. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). Although it is, of course, true that the review of the factual allegations of a complaint on a motion to dismiss is to be "undertaken with a generous and hospitable approach," Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), it is equally true that "[a] pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011).

Hoffman insists that the critical issue is the one identified by the trial judge on the motion for reconsideration, that is whether Dr. Salerno complied with the dictates of Lowe and Eagan, which required the University of Medicine and Dentistry of New Jersey, Rowan's predecessor, to ensure its clinical professors advise patients that they are public employees. Hoffman argues that without knowing whether Dr. Salerno orally advised plaintiff that

he was a public employee, it is impossible to determine whether plaintiff's claim accrued on the "surgery [date] or at the time that Dr. Salerno filed his answer in the underlying action, . . . the latter of which" occurred when Ginsberg was representing plaintiff, which would make him and Ginsberg joint tortfeasors.

We disagree that Dr. Salerno's compliance with Lowe and Eagan has anything to do with the accrual of plaintiff's cause of action under the Tort Claims Act. Hoffman confuses accrual of the cause of action with extraordinary circumstances justifying a late notice of claim. As Justice Long explained twenty years ago in Beauchamp v. Amedio, "[i]t is a common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable," although "they are entirely distinct." 164 N.J. 111, 119 (2000).

Ascertaining the timeliness of a Tort Claims Act notice requires a simple, three-step sequential analysis that never changes. Id. at 118. The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1. Beauchamp, 164 N.J. at 118. "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." Ibid. Once the date of accrual is ascertained, one can proceed to the second step, which "is

to determine whether a notice of claim was filed within ninety days" as required by N.J.S.A. 59:8-8. Beauchamp, 164 N.J. at 118. "If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice" under N.J.S.A. 59:8-9. Beauchamp, 164 N.J. at 118-19. Applying that analysis here makes plain plaintiff's medical malpractice claim against Dr. Salerno and Kennedy was lost before Ginsberg got into the case, that he and Hoffman thus could not be joint tortfeasors, and Hoffman's third-party complaint for contribution and indemnification was properly dismissed with prejudice for failure to state a claim.

N.J.S.A. 59:8-8, the section of the Tort Claims Act addressing presentation of claims, provides that a claim must be presented "not later than the 90th day after accrual of the cause of action." The statute further provides that a claimant will be "forever barred" from recovery against a public employee or entity if she fails "to file the claim with the public entity within 90 days of accrual except as otherwise provided in N.J.S.[A.] 59:8-9." N.J.S.A. 59:8-8(a). N.J.S.A. 59:8-9, is "the savings provision" of the Act, which can alleviate "[t]he sometimes harsh impact of the 90-day notice of claim requirement set forth in 59:8-8." Margolis and Novack, Claims Against Public Entities cmt. to N.J.S.A. 59:8-9 (2020). N.J.S.A. 59:8-9 provides in

pertinent part that "[a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8" may "be permitted to file such notice at any time within one year after the accrual of his claim" if he can show "sufficient reasons constituting extraordinary circumstances for his failure to file" within ninety days of the accrual of his cause of action as required by N.J.S.A. 59:8-8, "provided that the public entity or the public employee has not been substantially prejudiced thereby."

A claim "accrues" under section 8-1 of the Tort Claims Act "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. See also Tortorello v. Reinfeld, 6 N.J. 58, 65 (1959); Margolis and Novack, Claims against Public Entities, 1972 Task Force Comment to N.J.S.A. 59:8-1 (2020). The discovery rule likewise applies in a Title 59 matter in the same fashion it would were the defendant a private citizen, tolling accrual of the claim until the plaintiff is reasonably aware that she has been injured by the fault or neglect of an identifiable person or entity. See McDade v. Siazon, 208 N.J. 463, 475 (2011).

Here, there is no question but that plaintiff's claim accrued on the date of her surgery. Plaintiff was advised immediately after her surgery that she had

been injured and was, of course, aware her surgeon was potentially responsible. See Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001) (providing examples of cases in which "knowledge of fault is acquired simultaneously with knowledge of injury," such as the extraction of the wrong tooth or a foreign object left in the body after surgery). That she may have been unaware that her surgeon was a public employee does not implicate the discovery rule. See McDade, 208 N.J. at 479 (2011) ("Given plaintiffs' awareness of the injury, and their knowledge that the entity responsible for the pipe was a potential tortfeasor, the discovery rule does not toll the date of accrual of plaintiffs' cause of action.").

Lowe and Eagan, on which plaintiff relies, are not to the contrary. In each case the defendant doctor's "status as a public employee was obscured by his apparent status as a private physician." Lowe, 158 N.J. at 629; Eagan, 158 N.J. at 640. But because both Lowe and Eagan, like plaintiff here, were aware of their injuries and the identity of the doctors potentially responsible, the discovery rule had no application. Instead, the Court determined that the "unique facts" obscuring the defendant doctors' status as public employees, "[c]oupled with the legal doubt surrounding the status of UMDNJ professors as

A-1488-19T1

public employees" constituted extraordinary circumstances permitting a late notice of claim. Lowe, 158 N.J. at 630-31; Eagan, 158 N.J. at 642-43.

Applying Beauchamp's three-step sequential analysis to the undisputed facts on the motion, we know plaintiff's claim accrued on the surgery date in August 2013, and that no notice of claim was served on either Dr. Salerno or Rowan within ninety days thereafter. That leaves only the question of whether extraordinary circumstances could justify a late claim notice "within one year" of accrual of the claim. N.J.S.A. 59:8-9. Here, however, no application for permission to file a late claim was made within a year of accrual, or indeed at any time before Hoffman withdrew from the representation in June 2015, twenty-two months after plaintiff's cause of action accrued.

Hoffman's failure to serve a tort claim notice on Dr. Salerno or Rowan within ninety days of plaintiff's surgery or to petition the court to permit a notice of late claim within one year thereafter "forever barred" plaintiff from any recovery against Dr. Salerno or Rowan, a year before Ginsberg took over the file. See N.J.S.A. 59:8-8; O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 346 (2019) (noting "N.J.S.A. 59:8-9 permits a claimant to file an application for leave to serve a late notice of claim on a showing of extraordinary

circumstances, so long as the application is filed within one year of the accrual of the claim").

Although Hoffman's loss of plaintiff's medical malpractice claim before Ginsberg's entry into the case makes clear that Hoffman and Ginsberg could not be joint tortfeasors, and thus Ginsberg's motion to dismiss Hoffman's third-party complaint should have been granted as a matter of law, we nevertheless address, briefly, the effect of plaintiff's alleged unawareness of Dr. Salerno's status as a public employee.

That issue, as should be clear from what we've already said, is not an accrual issue but an argument for extraordinary circumstances justifying a notice of late claim within the one year permitted by N.J.S.A. 59:8-9. Considering the issue in its proper context under the unique circumstances of this case makes plain the issue is irrelevant under established precedent, even assuming Hoffman had filed a timely motion for late claim, which he did not.

The critical fact here is that Hoffman realized the necessity of a tort claim notice and indeed served one within ninety days of plaintiff's surgery. He simply served it on the wrong entity and never followed-up to ensure it was properly served in time to save plaintiff's cause of action against Dr. Salerno or Rowan. Hoffman cannot rely on his client's lack of knowledge of Dr.

Salerno's status or the requirements of the Tort Claims Act in the face of his own knowledge of the Act's requirements and his having filed an ineffective notice of claim and not correcting the problem over a ten-month period. The law is now well-settled that a lawyer's "inattention or even malpractice" in failing to serve a tort claims notice does not constitute extraordinary circumstances. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 157 (2013). Should there have been any doubt on the point, the Court's recent opinion in O'Donnell put it to rest. See O'Donnell, 236 N.J. at 351-52 (finding extraordinary circumstances where plaintiff's counsel served a timely notice of claim on the wrong party, notwithstanding D.D., because of the additional circumstances of another party injured in the same accident having served a timely notice of claim on the correct party "listing the exact circumstances surrounding the accident and the same theory of liability" and plaintiff having sought permission to file a late claim notice within one year of the accident).

Because long-standing interpretation of the Tort Claims Act establishes that plaintiff's claim was irretrievably lost by Hoffman before Ginsberg's entry into the case, mandating dismissal of Hoffman's third-party complaint for contribution and indemnification against Ginsberg as a matter of law, we need not consider Ginsberg's alternative argument that the claim is also barred by

15

our Supreme Court's holding in <u>Olds v. Donnelly</u> that an attorney cannot sue her successor for indemnity and contribution for the claims of their mutual client absent a duty owed by the successor to the prior lawyer. <u>See</u> <u>Olds</u>, 150 N.J. at 443-44.

The order denying Ginsberg's motion to dismiss Hoffman's third-party complaint is reversed, and the case is remanded for entry of an order dismissing the third-party complaint. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION