**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1100-19T3

AHMAAD GRIFFIN,
Administrator Ad
Prosequendum of the Estate
of GREGORY GRIFFIN,
and AHMAAD GRIFFIN,
Administrator of the Estate
of GREGORY GRIFFIN,

      Plaintiff-Respondent,

v.

CITY OF NEWARK,
NEWARK POLICE
DEPARTMENT,
P.O. JOVANNY CRESPO,
and P.O. HECTOR ORTIZ,

      Defendants-Appellants.

_____

Argued September 14, 2020 – Decided January 12, 2021

Before Judges Sabatino, Gooden Brown, and DeAlmeida (Judge Sabatino concurring).

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6600-19.

Wilson D. Antoine, Assistant Corporation Counsel, argued the cause for appellant (Kenyatta K. Stewart, Corporation Counsel, attorney; Wilson D. Antoine, on the briefs).

Michael J. Epstein argued the cause for respondent (Epstein Law Firm, PA, attorneys; Michael J. Epstein, of counsel and on the brief; Michael A. Rabasca, on the brief).

PER CURIAM

Defendant City of Newark appeals from the October 25, 2019 order of the Law Division deeming a notice of claim filed with the city pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to 8-11, by an attorney purporting to act on behalf of the estate and heirs of decedent Gregory Griffin to have been timely filed. We reverse.

## I.

The following facts are derived from the record. On January 28, 2019, defendant Newark police officer Jovanny Crespo shot Griffin during a car chase. The incident began when Griffin and his passenger, Andrew J. Dixon, fled a motor vehicle stop by another officer. Their car was pursued by a number of officers through the streets of Newark. During the chase, Crespo exited his police cruiser three times and shot into Griffin's moving vehicle, ultimately striking both Griffin and Dixon. The two injured men were transported to a

trauma center for medical treatment. Police recovered a loaded, semi-automatic handgun from Griffin's car.

On January 29, 2019, Griffin succumbed to his injuries. He died intestate, survived by four children. Two of his children are adults: daughter Ragiah Harrington, age twenty, and son plaintiff Ahmaad Griffin, age eighteen. His two remaining children are minor daughters, ages nine and four. Griffin was also survived by his father Alphonso Whitaker. Dixon survived the shooting.

In early February 2019, Whitaker contacted Patrick M. Rogan, an attorney licensed to practice law in Pennsylvania, to pursue legal claims on behalf of Griffin's estate and heirs against the city and the officers involved in the shooting. Although Whitaker had no authority to act on behalf of the estate and heirs, he was in contact with Griffin's surviving adult children and the mothers of his minor daughters.

According to his certification, Rogan conducted an Internet search that revealed the above-described details of the shooting and Griffin's death, except for Crespo's name. In addition, Rogan's research uncovered a statement by the Acting Essex County Prosecutor that his office was "actively investigating" the shooting, was "tak[ing] the . . . matter seriously[,]" as it does in "all cases involving the use of force[,]" and would be "reviewing the evidence carefully"

and "present[ing] the case to the" grand jury, as required by the Attorney General's guidelines.

Rogan did not seek further information from any other source, including defendant Newark Police Department or the county prosecutor's office. According to Rogan, he was "aware through [his] years of practice that neither [of those entities] would release any pertinent information or materials related to the incident while the investigation was open and ongoing."

On February 15, 2019, Rogan told Whitaker that there was "no factual or legal basis to conclude or even allege that" the city or any of its officers acted improperly or wrongfully. Rogan and Whitaker "agreed to speak again when more information became available." As a result, Rogan did not file a notice of claim with the city concerning Griffin's death.

On February 26, 2019, the Newark Public Safety Director Anthony F. Ambrose announced that the city "ha[d] concerns about [the] shooting and [would] cooperate fully with" the prosecutor's investigation. Ambrose also announced the officer who shot Griffin had been suspended "in the best interest of our community members." He did not name Crespo. Also on February 26, 2019, the Acting County Prosecutor issued a press release stating that the "investigation [was] active and ongoing" and that "the evidence gathered, so far,

raises serious questions about the officer's conduct." At the time, all body and dashboard camera video recordings of the incident were in the possession of the prosecutor's office and had not been publicly released.

Whitaker met with Rogan on the same day that the city announced the officer's suspension. The two men spoke on the phone with one of Griffin's adult children and representatives of his three other children, all of whom agreed to pursue "any and all available claims and remedies" arising out of the shooting and Griffin's death. All of the heirs agreed to retain Rogan to represent Griffin's estate to file legal claims against the city and its officers.

Plaintiff, Harrington, and the mother of decedent's nine-year-old daughter executed retainer agreements with Rogan. The dates of the agreements are not specified in the record. They agreed that either plaintiff or Whitaker should be appointed Administrator and Administrator Ad Prosequendum of Griffin's estate. The mother of Griffin's four-year-old daughter did not execute a retainer agreement with Rogan and did not respond to him or Griffin's other heirs after the February 26, 2019 meeting.[1]

---

[1] According to her affidavit, the mother of Griffin's youngest child declined to retain Rogan because he was not experienced in pursuing personal injury claims, was not admitted to practice law in New Jersey, and asked her to sign a retainer agreement with a contingent fee in excess of that permitted by New Jersey law.

On May 21, 2019, a grand jury indicted Crespo on charges of aggravated manslaughter, N.J.S.A. 2C:11-4(a), aggravated assault, N.J.S.A. 2C:12-1(b), possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and official misconduct, N.J.S.A. 2C:30-2, for his role in the shooting. The prosecutor's office released the video recordings of the incident the same day. The Acting County Prosecutor stated at a news conference that it "is the State's position that [Crespo's] conduct that night was criminal," and that he "showed a reckless disregard for human life by shooting into a moving vehicle . . . which had heavily tinted windows."

According to Rogan, it was only after the announcement that Crespo had been indicted that it became apparent to him that Griffin's estate and heirs had viable claims against the city, Crespo, and the other officers involved in the shooting. Rogan informed Whitaker that "time was now of the essence" to have someone appointed as Administrator of the estate and to file a notice of claim.

On May 23, 2019, Rogan filed a notice of claim with the city's Department of Law, its Office of Public Safety, and the Office of the Attorney General. The notice of claim states that it was filed on behalf of Griffin's estate and heirs "c/o Mr. Alphonso Whitaker" and names Crespo, defendant Newark Police Officer Hector Ortiz, the city, and its police department as responsible for Griffin's

death.  The notice of claim was filed 115 days after the shooting, 114 days after Griffin's death, eighty-seven days after the city announced the suspension of the officer involved in the shooting, and two days after Crespo was indicted.[2]

The following day, Rogan received a letter from an attorney representing the city advising that the "notice of claim was not timely served within 90 days of the incident."  The city took the position that the ninety-day period for filing a notice of claim set forth in N.J.S.A. 59:8-8 expired, at the latest, on April 29, 2019, ninety days after Griffin's death.  Rogan did not respond to the letter.

On May 31, 2019, plaintiff, with the consent of Harrington and the mother of Griffin's nine-year-old daughter, retained Michael J. Epstein, Esq., to obtain plaintiff's appointment as Administrator and Administrator ad Prosequendum of Griffin's estate and to pursue claims against the public entities and officers allegedly responsible for Griffin's death.

On June 26, 2019, Epstein filed a complaint and order to show cause in the Chancery Division seeking plaintiff's appointment as Administrator and Administrator ad Prosequendum of Griffin's estate.  The mother of Griffin's youngest daughter filed a competing application to be appointed Administrator.

---

[2] The notice of claim does not indicate that one of Griffin's heirs did not retain Rogan as counsel, nor does it state that an Administrator had not yet been appointed for Griffin's estate.

She argued that because no one had been appointed Administrator, Rogan was not authorized to file the May 23, 2019 notice of claim.

On August 9, 2019, the Chancery Division entered an order naming plaintiff as Administrator and Administrator ad Prosequendum for the estate.

On September 9, 2019, plaintiff filed a motion in the Law Division for an order deeming the May 23, 2019 notice of claim to have been timely filed. Plaintiff argued that although he, the other heirs, and Whitaker knew shortly after the incident of Griffin's death and the involvement of police officers employed by the city, they did not have sufficient information to allege wrongdoing, and therefore the claims of the estate and heirs did not accrue until the May 21, 2019 announcement of Crespo's indictment. In addition, plaintiff argued that if the court disagreed with that position, the claims of the estate and heirs accrued at the earliest on February 26, 2019, when the city announced the suspension of an unnamed officer, eighty-seven days prior to the filing of the notice of claim.

Alternatively, plaintiff argued that if the claims of the estate and heirs arose prior to February 22, 2019,[3] the court should grant him leave pursuant to N.J.S.A. 59:8-9 to file a late notice of claim because of a lack of prejudice to the

---

[3] February 22, 2019 is ninety days prior to May 23, 2019.

defendants and extraordinary circumstance that caused the failure to file a timely notice. He argued that the city and its employees would not be prejudiced by a late notice of claim because the claims of Griffin's minor survivors have not yet accrued, see N.J.S.A. 59:8-8 ("[n]othing in this section shall prohibit a minor . . . from commencing an action under this act . . . after reaching majority . . ."), and because the estate and heirs could assert State and federal constitutional and statutory claims not subject to the TCA's notice provisions. See Owens v. Feigin, 194 N.J. 607, 609 (2008) (TCA's notice-of-claim provisions do not apply to claims asserted under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2); Schneider v. Simonini, 163 N.J. 336, 372 (2000) (TCA's notice-of-claim provisions are inapplicable to civil rights actions under 42 U.S.C. § 1983). He argued that the extraordinary circumstances standard was satisfied because no one had authority to file a notice of claim on behalf of the estate until his appointment to the Administrator positions.

The city opposed the motion, arguing that the claims of the estate and heirs accrued on January 28, 2019, the day of the shooting or, at the latest, on January 29, 2019, the day Griffin died. The city argued that plaintiff, the other heirs, and Whitaker had sufficient information to file a notice of claim prior to the expiration of the ninety-day period or could have obtained sufficient

9

information by conducting a further investigation, filing a public records request with the city, or interviewing Dixon.[4] In addition, the city argued that leave to file a late notice of claim is not warranted because, although the city concedes it would not be prejudiced by a late notice of claim, plaintiff cannot establish extraordinary circumstances justifying such relief. The city characterized the late filing as the consequence of Rogan's inadvertence or misunderstanding of the law, given that he confused the estate and heirs' ability to prove a claim against the city and its employees with their knowledge that Griffin's injuries were caused by city employees. Finally, the city argued that plaintiff failed to file the motion for leave to file a late notice of claim in a reasonable time after his appointment as Administrator.

On October 25, 2019, the trial court issued an oral opinion granting plaintiff's motion. The court's findings of fact and conclusions of law suggest it granted plaintiff leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9:

> [I]f there ever was a case that says extraordinary circumstances, this is it based just only on the dates involved and the fact that certain information was not being released. It was obviously an ongoing investigation.
>
>     . . . .

---

[4] Dixon remained hospitalized after the shooting. A grand jury later indicted him on multiple charges arising from the incident.

A-1100-19T3

> And I think that in fact . . . the estate was at the appointment of an administrator who could legally proceed with the matter . . . on August 9th. The motion here was made a month later, on September 9th. I[] think that's a reasonable time based upon the circumstances.
>
> Also with regard to the other, and minimal information that was released by the Prosecutor's Office, given the fact that this was an ongoing and continuing . . . investigation . . . this is an extraordinary circumstance simply upon the way the facts of this case developed. And that being the case[,] I'm going to deem that the notice, the notice was timely filed . . . .

The October 25, 2019 order, however, suggests that the court concluded that plaintiff filed the notice of claim within ninety days of the accrual of the estate's claims. The order states, that it is "ORDERED that the Notice of Claim filed on May 23, 2019 on behalf of the heirs and estate of decedent . . . is hereby deemed timely filed . . . ." The court struck out the following paragraph of the order: "ORDERED that plaintiff's alternative application for leave to file a Notice of Claim out of time pursuant to N.J.S.A. 59:8-9 is hereby GRANTED."

The parties have different views of the basis of the court's decision. The city argues that the court granted plaintiff leave to file a late notice of claim. Plaintiff interprets the court's decision as concluding that the estate's claims did not accrue until the announcement of Crespo's indictment. We are not aided in

11

our understanding of why the court granted plaintiff's motion by the fact that its decision does not cite any statute or legal precedent.

This appeal followed.  The city raises the following arguments.

> POINT I
>
> THE COURT BELOW SHOULD HAVE DENIED THE MOTION FOR ABSENCE OF "EXTRAORDINARY CIRCUMSTANCES."
>
> POINT II
>
> THE LOWER COURT SHOULD NOT HAVE FOUND THAT PLAINTIFF'S MOTION FOR LEAVE WAS FILED WITHIN A REASONABLE TIME.
>
> POINT III
>
> PLAINTIFF'S NOTICE OF CLAIM WAS UNTIMELY.
>
> POINT IV
>
> PLAINTIFF'S NOTICE OF CLAIM WAS NOT SUBJECT TO EQUITABLE TOLLING.
>
> POINT V
>
> PLAINTIFF IS NOT ENTITLED TO THE DOCTRINE OF SUBSTANTIAL COMPLIANCE.

## II.

The TCA modifies the doctrine of sovereign immunity and establishes the parameters within which an injured party may recover for the tortious acts of

12

public entities and employees. Feinberg v. Dep't of Envt'l Protection, 137 N.J. 126, 133 (1994). The statute's "guiding principle" is "that immunity from tort liability is the general rule and liability is the exception." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. Dep't of Transp., 182 N.J. 481, 488 (2005) (internal quotations omitted)). The Act, therefore, "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011).

Among those requirements is that the claimant, prior to initiating suit, file a notice of claim describing "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," along with other information. N.J.S.A. 59:8-4(a) to (f). The notice of claim

> shall be presented . . . not later than the 90th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9 . . . .
>
> [N.J.S.A. 59:8-8.]

N.J.S.A. 59:8-9 provides that

> [a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 . . . , may, in the discretion of a judge of the Superior Court, be permitted

13

to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

As we recently explained, "[a]scertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." Ibid. (quoting Beauchamp, 164 N.J. at 118). "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).

14

Because the parties dispute the basis of the trial court's decision, we will address each of the three steps outlined in McNellis-Wallace, beginning with determining the date the claims of the estate and heirs accrued. "Accrual shall mean the date on which the claim accrued . . . ." N.J.S.A. 59:8-1. A claim accrues under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. Accrual of a survival cause of action is on the date of injury. Iaconianni v. N.J. Turnpike Auth., 236 N.J. Super. 294, 298 (App. Div. 1989). A wrongful death claim accrues on the date of death. Ibid.; Barbaria v. Twp. of Sayerville, 191 N.J. Super. 395, 400 (App. Div. 1983). We review de novo the trial court's determination of an accrual date. Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995).

As noted above, the city argues the claims of the estate and heirs accrued on the date of the shooting or the day Griffin died. According to the city, plaintiff, the other heirs, and Whitaker were immediately aware of Griffin's gunshot injury and death, that the injury and death were caused by a police officer's discharge of his firearm during a car chase, and that the officer was employed by the city. The city notes that shortly after the shooting plaintiff had knowledge of all of the information that ultimately was included in the May 23,

15

2019 notice of claim, apart from Crespo's name and the existence of the indictment. The city's rejection of the notice of claim was not based on an absence of sufficient information about the incident giving rise to the claim, but on the timing of its filing.

Plaintiff, on the other hand, argues that the claims accrued on May 21, 2019 when the indictment was announced. According to plaintiff, until then "it was not apparent that [Griffin's] heirs and estate had viable claims against defendants" because "no specific explanation or reason for the officer's suspension was provided, the facts and circumstances of [Griffin's] death were still unknown and unavailable, and the identity of the officer(s) involved . . . were still unknown." Alternatively, plaintiff argues the claims accrued at the earliest on February 26, 2019, when the city announced the suspension of the officer who shot Griffin because prior to that date, the limited information publicly reported provided no basis to believe the city or its employees had engaged in any wrongdoing. Plaintiff argues that a conclusion that the claims accrued on the day of the shooting would create a per se accrual rule in police-involved shooting cases that encourages "whimsical" filings of notices of claim.

Having reviewed the record in light of the well-established precedents, we are constrained to conclude that the claims of the estate and heirs accrued at the

16

latest on January 29, 2019, the day Griffin died.[5]  As the city convincingly argues, on that day, Griffin's heirs were aware that his death was the result of gunshot wounds inflicted by one or more Newark police officers during a car chase.  This was sufficient information to file a notice of claim alerting the city to the potential claims of the estate and its heirs.

We are not persuaded by plaintiff's argument that the accrual of the claims was tolled by the discovery rule until either the announcement that an officer was suspended or the announcement that Crespo had been indicted.  The discovery rule is grounded in "the unfairness of barring claims of unknowing parties," Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001) (quoting Mancuso v. Neckles, 163 N.J. 26, 29 (2000)), and tolls the running of a limitation period where "injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another," id. at 245-46 (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 66 (1998)).  "The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she

---

[5]  Arguably, the claims accrued on January 28, 2019, when Griffin was shot.  It is not clear from the record, however, that Griffin's heirs were aware of the shooting on that day, given that the incident took place at approximately 11:20 p.m.  The one-day difference is not material to the outcome of this appeal.

was injured due to the fault of another." Caravaggio, 166 N.J. at 246. The "knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." Savage v. Old Bridge-Sayerville Med. Grp., P.A., 134 N.J. 241, 248 (1993). The standard is awareness of fault that is merely possible, not legally certain, provable, or probable. Ibid.

The record convincingly establishes that shortly after Griffin's death, plaintiff and the other heirs were aware of the possibility that the city and its employees were liable for Griffin's death. In early February 2019, Whitaker, who was in contact with Griffin's adult surviving children and the representatives of his minor children, consulted an attorney seeking legal advice on whether the estate and heirs could assert claims against the city and the police officers involved in the shooting. At that time, the Acting County Prosecutor had publicly announced that his office was investigating the matter for presentation to a grand jury.

It was not a lack of awareness of the involvement of a public entity and its employees that caused the estate and heirs not to file a notice of claim. It

18

was Rogan's mistaken impression that in order to file a notice of claim the estate and heirs had to have a sufficient "factual or legal basis to conclude or even allege" that a public entity or its employees had "violated any right of and/or duty owed to" Griffin "or otherwise acted improperly . . . ." Rogan mistakenly conflated knowledge of a potential claim against the city with possession of sufficient information to successfully prove the city's liability.[6]

We are not persuaded by plaintiff's argument that a finding that the claims of the estate and heirs accrued on the day of Griffin's death will create a per se rule for police-involved shooting that encourages the filing of "whimsical" notices of claim. It is difficult to conceive of a situation in which the survivors of someone who died in a police-involved shooting would not have at least a colorable basis to file a notice of claim in the ninety days following the event. It is undoubtedly true that many such uses of force will be determined to have been justified, with no liability attaching to the officers or agency that employs them. In those instances, however, a notice of claim filed by the decedent's

---

[6] There is no evidence in the record that Rogan is licensed to practice law in New Jersey. We offer no view on the propriety of Rogan having: (1) provided legal advice to Whitaker and Griffin's estate and heirs with respect to how and whether to proceed with their tort claims under New Jersey law; (2) met with Whitaker in New Jersey for the purpose of providing legal advice; and (3) filed a notice of claim in New Jersey purportedly on behalf of the estate and heirs.

estate and heirs would have little detriment to the public entity, which almost certainly will have investigated the incident whether or not a notice of claim had been filed. However, where, as is the case here, the legality of the shooting is called into question, the notice of claim will have alerted the public entity to potential civil claims in the immediate aftermath of the event and satisfied the strict standards for abrogating immunity under the TCA.

Ninety days from January 29, 2019 was April 29, 2019. We conclude, therefore, that the May 23, 2019 notice of claim was filed after expiration of the ninety-day statutory period. The trial court erred to the extent that it determined that the notice of claim was timely filed.[7]

We turn to whether leave to file a late notice of claim on behalf of Griffin's estate and heirs was warranted. We review the trial court's application of the extraordinary circumstances exception in N.J.S.A. 59:8-9 for an abuse of discretion. McDade, 208 N.J. at 476-77. "Although deference will ordinarily be given" to the trial court's fact findings, "the court's conclusions will be

---

[7] Because we conclude that Griffin's heirs had sufficient information to file a notice of claim shortly after the shooting, we need not address whether they had an obligation to investigate the matter further by interviewing Dixon or making public records requests of the public entities investigating the incident.

overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147.

Prior to the enactment of N.J.S.A. 59:8-9, to be granted leave to file a late notice of claim, a claimant needed only show "sufficient reasons" prevented the filing of a timely notice of claim. Lowe v. Zarghami, 158 N.J. 606, 625 (1999). The statute was amended in 1994 to include the extraordinary circumstances standard, which is "more demanding[,]" id. at 625-26, and "raise[d] the bar for the filing of a late notice" of claim, Rogers v. Cape May Cty. Office of Pub. Def., 208 N.J. 414, 428 (2011). The party seeking leave to file a late notice of claim bears the burden of establishing extraordinary circumstances. Ventola v. N.J. Veterans' Mem'l Home, 164 N.J. 74, 80 (2000).

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of 'extraordinary' on the facts presented." Lowe, 158 N.J. at 626 (citations and internal quotations omitted). However, as the Supreme Court explained,

> [t]he Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself.

A-1100-19T3

> Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.
>
> [D.D., 213 N.J. at 148-49.]

From January 29, 2019, when the claims of the estate and heirs accrued, to April 29, 2019, when the statutory ninety-day period expired, no impediment existed to plaintiff, Griffin's other heirs, or Whitaker filing a notice of claim informing the city that Griffin's estate and heirs might file tort claims arising from the shooting. While it is true that no one had been appointed to the Administrator positions for the estate, such an appointment is not necessary to file a protective notice of claim on behalf of the estate. A notice of claim shall be "signed by the claimant or by some person on his behalf." N.J.S.A. 59:8-5. This includes counsel acting in the claimant's interest, even if not retained or authorized to do so. S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 121-22 (1977) (concluding attorney can move for leave to file late notice of claim on behalf of claimant without having been retained to do so because he was not

"an officious intermeddler[] in presuming to make the . . . motion on [the claimant's] behalf."). In addition, N.J.S.A. 3B:10-19 provides that "[t]he powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." Thus, plaintiff could have filed a timely notice of claim on behalf of the estate and heirs and sought retroactive validation of the notice once appointed to the Administrator positions.

Notably, Rogan filed the May 23, 2019 notice of claim purportedly on behalf of the estate and heirs prior to plaintiff's appointment to the Administrator positions and without having been retained to do so by all of the estate's heirs. He presumably did so with the intention of seeking retroactive validation of the notice of claim under N.J.S.A. 3B:10-19 after appointment of plaintiff to the Administrator positions. The city's rejection of the notice of claim was based only on its late filing and not on a claim that Rogan lacked legal authority to file the notice of claim because an Administrator had not been appointed.

Nor does Rogan's mistaken interpretation of New Jersey law to require a claimant to have a provable claim before filing a notice of claim constitute an extraordinary circumstance. As our Supreme Court has unequivocally held, "we cannot agree that an attorney's inattention to a file, or even ignorance of the law,

23

equates with extraordinary circumstances for tort claims purposes." D.D., 213 N.J. at 156.

The few instances in which published precedents support a finding of extraordinary circumstances do not apply here. For example, the record does not demonstrate that the involvement of the city or its officers was withheld from plaintiff by another public entity. See Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 534 (App. Div. 2010) (finding extraordinary circumstances where a videotape depicting the involvement of a municipal ambulance in a motor vehicle accident that injured plaintiff was withheld by a public highway authority until after expiration of the ninety-day notice period). The fact that the body and dashboard video recordings were not released until the announcement of Crespo's indictment is not the equivalent of the circumstances in Mendez. Here, prior to the release of the video recordings, although plaintiff, the heirs, and Whitaker did not know the name of the officer who shot Griffin or the exact details of the officer's conduct, they were aware that the city and its officers were involved in the shooting that resulted in Griffin's death. As we previously held, this was sufficient information to file a notice of claim.

Similarly, the officers' status as public employees was not obscured by the circumstances that gave rise to Griffin's injuries. See Lowe, 158 N.J. at 629

24

(finding extraordinary circumstances where a physician employed by a public entity allegedly committed medical malpractice during surgery on plaintiff at private hospital, obscuring his public employment). Nor was there confusion as to whether a State or federal agency employed the officers involved in the shooting. See Ventola, 164 N.J. at 82 (finding extraordinary circumstance where plaintiff was under the mistaken impression that a veterans' residential care facility was operated by the federal government). Plaintiff's failure to file a timely notice of claim cannot be attributed to an attorney's reasonable reliance on precedent from this court that arguably supported his interpretation of the TCA's notice requirement. See Beauchamp, 164 N.J. at 122-23. Finally, plaintiff did not prepare a timely notice of claim naming the city that was filed with the wrong public entity while another claimant filed a timely notice of claim on the city arising from the same incident naming the plaintiff as an injured party, two factors found to be a "rare case" that constitutes extraordinary circumstances in O'Donnell v. New Jersey Turnpike Authority, 236 N.J. 335, 350-52 (2019).

By February 26, 2019, well within ninety days of Griffin's death, plaintiff, Harrington, and the representative for both minor children had consulted Rogan and agreed to seek plaintiff's appointment to the Administrator positions

necessary to initiate suit on behalf of Griffin's estate. All but the representative of one of the minor heirs signed retainer agreements with Rogan. They were clearly aware less than a month after Griffin's death of their potential legal claims against the city and the officers involved in the shooting. There was no obstacle to those heirs filing a notice of claim at that time, which Rogan did almost two months later, or initiating a legal action in the Chancery Division for the appointment of an Administrator and seeking leave to file a protective notice of claim on behalf of the estate and heirs. The fact that there were competing claims for appointment as Administrator did not preclude, and may have been an incentive to, filing a legal action to resolve the dispute prior to expiration of the ninety-day period.

We recognize that the city concedes that it would suffer no prejudice as the result of the filing of a late notice of claim. Because plaintiff did not demonstrate extraordinary circumstances for the late filing, the lack of prejudice to the city is not relevant to our analysis. In addition, in light of our holding with respect to the absence of extraordinary circumstances, we do not reach the question of whether plaintiff's motion for leave to file a late notice of claim was filed within a reasonable time.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1100-19T3

_____

**SABATINO, P.J.A.D., concurring.**

I join in the majority's opinion for the analytically sound reasons it expresses. I briefly write to highlight two concerns.

First, as the city concedes, it has sustained no substantial prejudice from plaintiff's modest twenty-four-day delay beyond the prescribed deadline in serving a tort claim notice. Counsel have advised us that, consistent with law enforcement policies pertaining to a police officer's use of a firearm, the city would not have conducted an independent investigation into the shooting while the Acting County Prosecutor was actively investigating the matter.

The completed tort claims notice form provided the city with little or no information it did not already know. It is unlikely the survivors' claims in this shooting matter, which resulted in an officer's indictment, could have settled within or shortly after the statutory ninety-day notice period. This is not a simple pothole or uneven sidewalk case. The form's twenty-four-day tardiness was inconsequential here as a practical matter.

That said, I am mindful that case law has strictly enforced the TCA's statutory notice deadline. See, e.g., D.D. v. UMDNJ, 213 N.J. 130 (2013) (holding, in a 3-2 opinion, that neither a claimant's mental or emotional state, nor the inattention of her attorney, comprised "extraordinary circumstances" under N.J.S.A. 59:8-9 to extend the ninety-day notice period). As a matter of

law, for a claimant to gain an extension under N.J.S.A. 59:8-9, extraordinary circumstances are an independent requirement apart from lack of substantial prejudice. We are constrained by precedent to not relax the ninety-day deadline in the present setting. Plaintiff's mistaken assumption about the accrual of the claims does not qualify under case law as an extraordinary circumstance. In any event, the statutory civil rights claims of all four surviving children and the negligence claims of the two minor children can proceed.

My second point of concern is that, as a policy matter, the Legislature might want to consider revising N.J.S.A. 2A:14-23.1 and N.J.S.A. 59:8-8 to allow grieving family members in TCA cases involving fatalities some additional time for them or their representative(s) to serve tort claims notices. The objective of the special six-month period established in N.J.S.A. 2A:14-23.1 for tolling the statute of limitations for wrongful death claims is "the salutary purpose of providing executors and administrators with a limited period of time after death to evaluate potential claims available to the estate." Warren v. Muenzen, 448 N.J. Super. 52, 67-68 (App. Div. 2016); see also Repko v. Our Lady of Lourdes Medical Center, Inc., 464 N.J. Super. 570, 577 (App. Div. 2020) (quoting and reaffirming that observation of legislative purpose). The same policy considerations arguably extend to a decision by survivors to place

a public entity on formal notice of their intention to sue it for the decedent's demise. Where, as here, the decedent is intestate and has multiple survivors, there can be confusion and disagreement about who should serve as the estate's administrator, which counsel should be retained to interact with the public entity concerning the claims, and the terms of such counsel's retention.

Here, the unrefuted certification of the mother of the four-year-old youngest surviving child reflects that she did not wish the Pennsylvania attorney to file a tort claims notice on her child's behalf. Among other things, she expressed concerns that the Pennsylvania attorney lacked expertise in New Jersey negligence law and that the forty percent contingency fee demanded in his proposed retainer agreement was excessive. It is undisputed that she declined to sign the retainer agreement. The identity of the estate's administrator had not yet been resolved. It therefore appears to have been improper for the Pennsylvania attorney to convey to the city that he was acting on behalf of "the heirs and the estate". Although such provisional action conceivably could be ratified at a future time, it would have been preferable to have had a coordinated and fully authorized notice submitted on behalf of all the survivors.

If the statutes were amended to allow more time to serve a notice in TCA fatality cases, at least where the decedent is intestate, a more orderly process

could be followed that might allow grieving families a reasonable time to make appropriate joint decisions.

There may well be competing policy reasons disfavoring such an automatic time extension for certain case types, such as perhaps medical negligence claims as to which prompt notice may be essential for a public hospital to gather evidence quickly for anticipated civil litigation by the patient's estate. On the other hand, in fatal shooting matters such as this one – with an intestate decedent having multiple heirs and involving an active criminal investigation – there may be no compelling reason to force the heirs to file a joint tort claims notice in haste. These appear to be worthwhile subjects for legislative consideration and debate.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1100-19T3